(27 Misc. Rep. 153.)

### PEOPLE ex rel. MILLER v. FEITNER et al.

### PEOPLE ex rel. HERRICK v. SAME.

(Supreme Court, Special Term, New York County. April 21, 1899.)

MUNICIPALITIES—CIVIL SERVICE—COMPETITIVE CLASSES—REMOVAL.

    Laws 1898, c. 186, § 3, amending the general civil service act (Laws 1883, c. 354), giving municipal employés in competitive classes the right to be heard before removal, applies to deputy tax commissioners in Greater New York thus classified, though section 887 of its charter provides that they shall hold office during the pleasure of the board of taxes and assessments, and may be removed like deputies in other city departments.

Applications by the people on the relation of Robert Miller, and by the people on the relation of John J. Herrick, against Thomas L. Feitner and others, as commissioners of taxes and assessments of the city of New York, for peremptory writs of mandamus to compel the reinstatement of relators as deputy tax commissioners. Granted.

Samuel H. Ordway, for relators.

Theodore Connoly, James M. Ward, and John Whalen, Corp. Counsel, for respondents.

GIEGERICH, J. Prior to the 1st day of January, 1898, the relators were deputy tax commissioners under the former city government; and when the Greater New York charter went into effect, on that date, pursuant to the provisions of section 1536 thereof they were transferred to similar positions in the department of taxes and assessments. The municipal civil service commissioners, in conformity with the requirements of section 123 of said charter, prescribed certain

regulations for appointments to and promotions in the civil service in the city of New York, and for classification and examination therein, which were approved by the mayor thereof and promulgated on March 5, 1898. According to such regulations, the said positions were subject to a competitive examination, while all other deputy commissioners in the employ of the city were classified as holding noncompetitive positions. On March 31, 1898, the act (Laws 1898, c. 186) amending the general civil service law (Laws 1883, c. 354) went into effect, which act, among other things, provides that the civil service regulations of cities shall take effect only upon the approval of the mayor of the city and the state civil service commission, that within two months after the passage of the act the mayors of the various cities shall "cause to be arranged in classes the several clerks and persons employed or being in the public service of the city," and that, upon a failure to do so, the state civil service commission may, in a month thereafter, adopt new regulations. The amendment prescribes, furthermore (section 3):

"* * * If a person holding a position subject to competitive examination in the civil service of the state or of a city shall be removed or reduced, the reasons therefor shall be stated in writing and filed with the head of the department or other appointing officer, and the person so removed or reduced shall have an opportunity to make an explanation."

The relator Miller was summarily removed on May 27, 1898, and the relator Herrick on the 1st day of June following, from the positions so held, without charges having been made against either of them; and the contention is that their removal was in violation of the letter and spirit of the general civil service law (Laws 1883, c. 354, as amended by Laws 1898, c. 186). It is claimed for the respondents, on the other hand, that section 887 of the said charter authorized the removal of deputy tax commissioners without a hearing, notwithstanding the law of 1898, since that section provides, "Such deputy tax commissioners shall hold their office during the pleasure of the said board of taxes and assessments and shall be subject to removal by the said board as deputies in the other city departments;" and the cases of People v. Waring, 1 App. Div. 594, 37 N. Y. Supp. 478, affirmed in 149 N. Y. 621, 44 N. E. 1127; People v. Waring, 7 App. Div. 247, 40 N. Y. Supp. 35; People v. McCartney, 28 App. Div. 138, 50 N. Y. Supp. 919,—are relied upon to support such contention. In those cases it was held that the street-cleaning act relative to the city of New York (Laws 1892, c. 269), as to the street-cleaning department of said city, was in conflict with certain provisions of the general veteran act pertaining to removals (Laws 1888, c. 119, as amended by Laws 1890, c. 67), and that it was the intention of the legislature to take the uniformed force of the department out of the provisions of the latter as it then existed. But in view of the decision of the court of appeals in People ex rel. Fleming v. Dalton, 158 N. Y. 175, 52 N. E. 1113, respecting the act of 1898, these cases are inapplicable. In the case last cited the relator held a competitive position in the department of water supply (i. e. foreman of a repair yard), to which he had been regularly assigned pursuant to said section 1536 of the charter in question; and the respondents' counsel contended that he was removable at the pleasure of the head of such department, under the provisions of the last-cit-

ed section, which, so far as it related to the question under review, provided that "the head of every department    *    *    *    shall have power upon assuming office, or at any time thereafter, to remove any person assigned to service under him by said plan.    *    *    *"   However, the court held that the law of 1898 applied to the city of New York; that as the new civil service regulations of the said city, whereunder his position was classified as subject to competitive examination, were in force when the relator was removed, he was entitled, under section 3 of said last-mentioned act, to have the reasons for his removal stated in writing, filed, and an opportunity afforded him to make an explanation; and that hence his removal was, in the absence of compliance with such requirements, without warrant of law.   Bartlett, J., who spoke for a majority of the court, said (pages 181, 182, 158 N. Y., and page 1115, 52 N. E.):

"We come now to consider the act of 1898 (Laws 1898, c. 186), but, before doing so, will refer to our decision in the case of People ex rel. Leet v. Keller, 157 N. Y. 90, 51 N. E. 431, which seems to have been the subject of considerable misapprehension.   The relator in that case was superintendent of the city hospital in the old city of New York, and his position was subject to a competitive examination.   On January 1, 1898, he was transferred to the employment of the new city, and was thereafter removed, to take effect April 1, 1898.   On March 5, 1898, new civil service regulations went into effect in the present city of New York, under which the position of the relator was classified as noncompetitive.   Relator defended on the ground that he was removed without the reasons being stated in writing, filed, and opportunity for him to make an explanation, as provided in the act of 1898.   The two questions before us in that case were:  First, did the act of 1898 apply to the city of New York?   And, second, was it a defense, under the facts disclosed?   If the act did not apply to the city of New York, there was no necessity to construe it;  but a majority of the court decided, by construing it, that it did apply, and held that as the new civil service regulations for the city of New York took effect March 5, 1898, and the act of 1898 did not become a law until March 31, 1898, the act gave ninety days in which the new and existing regulations might be approved by the state civil service commission, and that they were in force in the meantime.   This resulted in our holding the removal of the relator regular on April 1, 1898.   The opinion, in the first ground discussed, expresses the view of the dissenting judges, and in the second ground deals with the decision of the court.   The case at bar presents a very different question than the Leet Case, just referred to, but does involve the applicability of the act of 1898 to the city of New York.   We have treated the latter question as if open, in order to discuss it.   In the case before us the relator's position was not only competitive under the regulations of the old city, but was classified as competitive under the civil service regulations of the present city.   It therefore follows that, if the act of 1898 applies to the city of New York, the relator was improperly removed, as under that act he was entitled to have the reasons for his removal stated in writing, filed, and an opportunity afforded him to explain.   As we have reached the conclusion that there is no separate and distinct civil service system provided for the present city of New York in its charter, and that the general civil service laws of the state are applicable to that city, save where repealed, directly or by implication, by that charter, it follows, subject to this limitation, that the act of 1883 (Laws 1883, c. 354), as amended by various acts, and finally amended by the act of 1898 (Laws 1898, c. 186), is applicable to the city of New York.   The act of 1898 modified and repealed the provisions of the Greater New York charter, so far as inconsistent with it, and subjected the present city to new civil service provisions, by amending the act of 1883."

Again, at page 184, 158 N. Y., and page 1116, 52 N. E., the learned justice said:

"We are of opinion that the legislative intention is clearly manifested to make this act general, and applicable to the entire state."

So far, therefore, as the provisions of the charter relating to matters of civil service are inconsistent with the provisions of the civil service law of 1898, they must, under the principles of the decision in the Fleming Case, be deemed to have been repealed; and I find no reason for holding that the inconsistency, as to the provisions for removal of deputy tax commissioners, was not within the contemplation of the legislature when enacting the general law of 1898, according to the spirit of the decision in the last-mentioned case.

Whatever conflict of fact is found in the papers with respect to the Herrick case has to do with another ground for mandamus, and, upon the admitted facts, I am led to conclude that the relators are each entitled to the writs sought, upon the ground that, as they were in the competitive class, their removal from office, without written charges and an opportunity for explanation, was contrary to law.

Applications granted, with $25 costs of each proceeding.