(29 Misc. Rep. 702.)

PEOPLE ex rel. STRAHAN v. FEITNER et al.[1]

(Supreme Court, Special Term, New York County. December, 1899.)

1. MUNICIPAL CORPORATIONS—REDUCTION UNDER CIVIL SERVICE—TAX COMMISSIONERS.

Under Laws 1898, c. 186, § 3, providing that a person employed under the civil-service competitive system shall not be reduced except for reasons stated in writing and filed, the reduction of a deputy tax commissioner, without setting forth the reasons therefor in writing, and filing same, is illegal and void.

2. SAME—REINSTATEMENT.

Relator, a city employé, had petitioned for mandamus for reinstatement to his former salary under the veteran acts. Four months after the decision by the court of appeals that Laws 1898, c. 186, § 3, prohibiting discharge of employés under the civil-service competitive system, except for reasons stated in writing, etc., was applicable to the city of New York, he moved to amend his petition under the veteran act, so as to claim relief under Laws 1898, which motion was denied. Thereupon he petitioned for mandamus for reinstatement to his salary under Laws 1898. *Held*, he was not guilty of such laches as would prevent his reinstatement.

Application for mandamus by the people, on the relation of James C. Strahan, against Thomas L. Feitner and others, commissioners of taxes, etc. Granted.

Howland & Murray, for relator.

John Whalen, Corp. Counsel, for respondents.

SCOTT, J. The relator, on September 1, 1876, was appointed a deputy tax commissioner of the former city of New York, and upon the creation of the present city of New York continued to hold the same position. From the time of his appointment until June 15, 1898, all the deputy tax commissioners were in the same grade or class, and received a uniform salary of $2,700. The position has for a long time been included in the classified service as a position to be filled only after an open competitive examination, and was so classified in the rules adopted by the municipal civil-service commission, and approved by the mayor on March 5, 1898. It is not questioned but that the position held by relator was one of those intended to be protected by section 3, c. 186, Laws 1898. People v. Feitner, 27 Misc. Rep. 153, 57 N. Y. Supp. 807, affirmed 42 App. Div. 622, 59 N. Y. Supp. 1112. When the tax commissioners of the present city of New York came into office, on January 1, 1898, they found that, while all the deputy tax commissioners were in one rank, receiving a uniform salary, the extension of the city limits by consolidation had brought within the jurisdiction of the tax department certain localities where the work required of the deputy tax commissioners was not as important, and did not demand as much attention, as in some other localities. The tax commissioners, thereupon, and on June 15, 1898, adopted a plan for the division of the deputies into five classes; the first class receiving a salary of $3,250 a year, and the lowest, or fifth, class receiving a salary of $1,500. Throughout his whole term of service, and at the present, the relator has been and is a resident of that portion of the city of New York now known as

[1] Affirmed on appeal, see 63 N. Y. Supp. 209.

the "Borough of Manhattan," and until the adoption of the plan of classifying the deputies, in June, 1898, the territory within which he performed his duties was in that borough. Upon the adoption of the plan of June 15, 1898, the relator was placed in the fifth, or lowest, grade, at a salary of $1,500, and assigned to perform duty in the borough of Richmond.

It is conceded that the reasons for the relator's reduction (if his relegation to the lowest rank at a lower salary was a reduction) were not stated in writing, and filed with the head of the department, and that no opportunity was afforded him to make an explanation. There can, I suppose, be little doubt that the effect of the tax commissioners' action was to "reduce" the relator, within the meaning of that word as used in chapter 186, Laws 1898. The statute is a remedial one, having for its purpose both the protection of the person directly affected and the general good of the public service. It is, therefore, to be literally construed. People v. Welde, 28 Misc. Rep. 582, 59 N. Y. Supp. 1030. It can hardly be questioned that when an officer, holding a responsible position, not only has his salary cut down, but is relegated from the first grade of officers of his class to the fifth grade, and is given duties to perform which are much less important than those formerly performed, he has been "reduced" both in rank and pay, and it is this kind of reduction which is contemplated by the statute. If, then, the relator was reduced, was the statute of 1898 violated by the commissioners?

It is contended on the part of the respondents that the adoption of the plan of classification of deputies was a mere question of administration; that, in placing the relator in the lowest grade, at the lowest salary, they merely exercised the right of rearranging their force so as to produce the best results; that in what they did they exercised their best judgment and discretion, which are not subject to question by their subordinates, or to criticism or correction by the court; that the assignment of the relator implied no personal unfitness or dereliction on his part; and that, therefore, there was nothing calling for an explanation, and no occasion for affording him an opportunity to explain. There are undoubtedly cases where an opportunity to make an explanation need not be afforded, because, from the very nature of the case, it would be ineffectual. People v. Waring (Sup.) 62 N. Y. Supp. 966; Kenny v. Kane, 27 Misc. Rep. 680, 59 N. Y. Supp. 555. It is not clear that this rule applies to the present case, although it is quite possible that no explanation would have altered the respondents' intention respecting the relator.

There is, however, another provision of the act of 1898 with which the respondents have failed to comply, and which is quite as mandatory as the provision respecting the opportunity to make an explanation. The reasons for the relator's reduction were not reduced to writing and filed with the head of the department. This was a clear violation of the statute. The provision thus disregarded is quite as important as that prescribing an opportunity for explanation, and may often be the means of making the latter provision effective. When filed, the reasons would become public records, and a subordinate who had been reduced or removed, if no opportunity

for explanation had been afforded, could at least learn why he had been so reduced or removed. The reasons might often be such as to justify, or even demand, an opportunity to make an explanation. The present case is highly illustrative of the value of, and necessity for, the filing of such a statement. Even the answer of the respondents to the relator's petition does not give anything which can properly be called a reason for the relator's reduction. There must have been some potent reason which led the commissioners to reduce the relator from the first grade to the fifth, and from a salary of $2,700 to one of $1,500, and to assign him to duty in the borough of Richmond, notwithstanding the general policy of assigning to duty former employés of the constituent municipal corporations now consolidated into the city of New York, which, by section 1536 of the charter, is declared to be "that each person shall be assigned as nearly as may be, without prejudice or advantage, to perform the same service and in the same part of the city, and to hold the same relative rank or position in the city constituted by this act, as he performed and held at the time said plan of apportionment and assignment is determined upon." It is true that this provision applied directly to the plan of apportionment of officials to be made by the mayors of the several cities before the charter went into effect, and in anticipation thereof; but it also indicates a legislative intent as to the assignment to duty of those who formerly held office and were by the charter transferred to the service of the new city,—an intent which should be some guide to the heads of departments in the distribution of their subordinates.

It is only fair to the respondents to believe that they must have had some especial reasons for their disposition of the relator, and, if those reasons had been truly set forth in writing and filed, it may be that they would have been such as to call for an explanation. The statement that the relator was assigned to the borough "in which his experience and intelligence could be best utilized" can scarcely be accepted as the real reason for his reduction and transfer, for the record shows that the relator's whole experience had been as a deputy performing duties in the borough of Manhattan,—an experience which could scarcely have been of much value when he was called upon to assess real estate values in the borough of Richmond. Although a removal or reduction of an officer holding a position classified as open to competitive examination may be made for reasons as to which any explanation would be obviously futile, yet, even in such a case, no reason exists why the mandate of the statute as to stating and filing the reasons for the removal or reduction should be disregarded; and because it was disregarded in the relator's case, his attempted reduction was illegal and void.

The relator has not, in my opinion, been guilty of any laches which should prevent his reinstatement. Within four months after the court of appeals had decided, in People v. Dalton, 158 N. Y. 175, 52 N. E. 1113, that the act of 1898 was applicable to the city of New York, relator moved to be permitted to withdraw his appeal from an order refusing him a mandamus under the veteran acts, and, having obtained such permission, promptly moved for leave to amend his

petition, so as to claim relief under the act of 1898. When that motion was denied, because of lack of power, the present proceeding was begun. Such vigilance destroys any supposed analogy between this case and that of People v. Board of Education of New York City, 158 N. Y. 125, 52 N. E. 722. The relator is, therefore, entitled to be restored to the position from which he was reduced,—that is to say, to a salary of $2,700 per annum,—and is entitled to be paid the difference between that salary and the salary he has actually received since his reduction. So far as restoring him to any particular grade is concerned, I do not find any warrant in the charter for classifying the deputy tax commissioners into grades, and do not understand, from the papers before me, that such classification by the commissioners means anything more than a division into classes depending upon the amount of salary received. Excepting as concerns the salary, the deputy tax commissioners all stand upon the same footing before the law, and in the relator's case the reduction consisted, not in nominally placing him in a grade numbered five, but in subjecting him to a reduction of salary below that which he had formerly received, and below that of others holding the same position that he held. The relator should also have $25 costs. Settle order and form of mandamus on notice.

Ordered accordingly.

