Tʜᴇ Pᴇᴏᴘʟᴇ ᴏғ ᴛʜᴇ Sᴛᴀᴛᴇ ᴏғ Nᴇᴡ Yᴏʀᴋ ex rel. Gᴇᴏʀɢᴇ Eᴅᴡɪɴ Lᴇᴇᴛ, Appellant, *v.* Jᴏʜɴ W. Kᴇʟʟᴇʀ, Commissioner of Public Charities for the Boroughs of Manhattan and the Bronx, Respondent.

1. Cɪᴠɪʟ Sᴇʀᴠɪᴄᴇ Lᴀᴡ — Aᴍᴇɴᴅᴍᴇɴᴛ ᴏғ 1898 Rᴇǫᴜɪʀɪɴɢ Aᴘᴘʀᴏᴠᴀʟ ᴏғ Cɪᴛʏ Rᴇɢᴜʟᴀᴛɪᴏɴs ʙʏ Sᴛᴀᴛᴇ Cᴏᴍᴍɪssɪᴏɴ ɴᴏᴛ Rᴇᴛʀᴏᴀᴄᴛɪᴠᴇ. Chapter 186 of the Laws of 1898, amending the Civil Service Law by providing, among other things, that city civil service regulations shall take effect only on approval by the state commission, and that if a person holding a competitive position shall be removed he shall have an opportunity to make an explanation, is wholly prospective and not retroactive, did not invalidate city regulations which had been lawfully adopted at the time of its enactment, and contemplated the application of city regulations in existence at its passage to appointments and classifications for three months thereafter, unless new regulations were approved by the state commission in the meantime.

2. Nᴇᴡ Yᴏʀᴋ Cɪᴛʏ Cɪᴠɪʟ Sᴇʀᴠɪᴄᴇ Rᴇɢᴜʟᴀᴛɪᴏɴs. The act of 1898, being wholly prospective, did not invalidate the regulations of the city of New York, in existence at its passage, lawfully adopted under the new charter without approval by the state commission, or acts done under those regulations before the act providing for changes in the system took effect ; but as to cases coming into existence after its passage, the civil service rules of the city must receive the approval of the state commission to be effective.

3. Rᴇᴍᴏᴠᴀʟ ᴜɴᴅᴇʀ Nᴇᴡ Yᴏʀᴋ Cɪᴛʏ Rᴇɢᴜʟᴀᴛɪᴏɴs. The act of 1898 did not invalidate a removal, without a hearing, of a person holding a position which at the time of his appointment was competitive but which was classified as non-competitive by the New York city civil service regulations in existence at the passage of the act, made under those regulations before, and taking effect the day after, the passage of the act.

*People ex rel. Leet* v. *Keller,* 31 App. Div. 248, affirmed.

(Argued October 5, 1898; decided October 25, 1898.)

Aᴘᴘᴇᴀʟ from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 8, 1898, affirming an order of the Special Term denying a motion for a peremptory writ of mandamus.

The relator was appointed, in 1896, superintendent of the city hospital by the commissioners of public charities of the former city of New York. By the civil service regulations of the then city, his position was one of those " to be filled by

selection from those who have passed highest in open competitive examinations." On January 1st, 1898, he was transferred to the employment of the new city, in the department of public charities, to hold the same position, and on March 31st, 1898, he was removed from his position, the removal to take effect April 1st, 1898. On March 5th, 1898, the municipal civil service commissioners of the present city of New York, who had been appointed on January 1st, 1898, by the mayor, made certain rules and regulations which were approved by the mayor, under which the position of the relator was classified in the schedule of positions not subject to competitive examinations. On March 31st, 1898, chapter 186 of the Laws of 1898 went into effect, as an amendment of the General Civil Service Law passed in 1883. Among other things, the amendatory law provided that if a person holding a position subject to competitive examination shall be removed, or reduced, the reasons therefor shall be stated in writing and the person so removed have an opportunity to make an explanation and, further, that the civil service regulations of cities should be approved by the state civil service commission.

Upon his removal from office, the relator applied for a peremptory writ of mandamus commanding the respondent to reinstate him in the position which he had held; upon the ground that he was removed without the hearing, or an opportunity to make an explanation, to which he was entitled by law. His application was denied at the Special Term and, upon appeal, the order was affirmed by the Appellate Division of the first judicial department. From the order of affirmance the relator has appealed to this court.

*Julius M. Mayer* and *Samuel H. Ordway* for appellant. An examination of the history of civil service legislation in this state, and of the provisions and language of the different laws passed from time to time, and of the circumstances surrounding such legislation and upon which it was based, clearly demonstrates that the intention of the legislature was to make chapter 186 of the Laws of 1898 apply to the entire civil serv-

ice of the state and of each and all of the cities thereof, including the city of New York. (*Matter of Dobson*, 146 N. Y. 357; *Stack* v. *City of Brooklyn*, 150 N. Y. 335; *People* v. *Jaehne*, 103 N. Y. 182, 194; *People ex rel.* v. *Roberts*, 148 N. Y. 360.) The charter of the city of New York does not constitute or form a distinct, separate and complete local system of civil service laws applicable to the city of New York alone, and exclusive of all other legislation on the subject, and was not intended to do so by the legislature. (*Bowen* v. *Lease*, 5 Hill, 221; *People ex rel.* v. *Angle*, 109 N. Y. 564; *McCartee* v. *Orphan Asylum Society*, 9 Cow. 437, 506, 507; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424.) The charter did not repeal that part of the law of 1883 or the subsequent provisions of section 5 of the "Black Law," requiring the municipal civil service rules to be approved by the state civil service commission. (*Ferguson* v. *Ross*, 126 N. Y. 459, 464; Record N. Y. Const. Conv. 690; *Rogers* v. *Com. Council of Buffalo*, 123 N. Y. 173; *People ex rel.* v. *Murray*, 149 N. Y. 367, 375; *McCurtee* v. *Orphan Asylum Society*, 9 Cow. 437, 506, 507; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *Bank of Metropolis* v. *Faber*, 150 N. Y. 200, 206; *Stack* v. *City of Brooklyn*, 150 N. Y. 345; *Matter of Henneberger*, 155 N. Y. 420, 426.) But if, under the charter of the Greater New York, civil service rules adopted by the local commissioners and approved by the mayor would be valid and operative without the approval of the state civil service commission, then chapter 186 of the Laws of 1898 modified the charter to that extent, and imposed the additional requirement that the rules of the city of New York should be approved by the state civil service commission before taking effect and becoming operative. (*People ex rel.* v. *Supervisors*, 67 N. Y. 109; *People* v. *Wilmerding*, 136 N. Y. 363, 368; *Matter of Prime*, 136 N. Y. 347, 355; *People* v. *Jaehne*, 103 N. Y. 182; 123 N. Y. 262; 112 N. Y. 112; 109 N. Y. 262; 126 U. S. 193; *Bd. of Comrs. of Excise* v. *Burtis*, 103 N. Y. 136; *Matter of Dobson*, 146 N. Y. 357, 359.) Assuming that, under the charter, submission to the state board is not required, the mere fact that the law of 1898 was

a general law does not necessarily prevent it supplementing or modifying the charter in so far as to require the local board to have its civil service rules approved by the state board. The question always is the intent. (Black on Interp. Laws, § 153; Suth. on Stat. Const. § 159; *U. S.* v. *Tynen*, 11 Wall. 88; *U. S.* v. *Henderson*, 11 Wall. 652; *Bowen* v. *Lease*, 5 Hill, 221; *Bd. of Comrs. of Excise* v. *Burtis*, 103 N. Y. 136.) In any event, section 3 of chapter 186 of Laws of 1898 applies to New York city. (Endlich on Interp. Stat. §§ 43, 107; Potter's Dwarris on Stat. 73, 189, 231; *Hudler* v. *Golden*, 36 N. Y. 446; Sedg. on Const. Stat. Law [2d ed.], 209; *Bowen* v. *Lease*, 5 Hill, 221, 226; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424.) Section 1618 of the charter contains nothing which requires a decision inconsistent with the position of the relator as stated in the foregoing points. (*Mongeon* v. *People*, 55 N. Y. 613, 618.)

*T. E. Hancock* for appellant. There has always been manifested a clear and positive legislative intent to establish a uniform system of civil service applicable to the state and the various civil subdivisions thereof; and for that purpose the civil service commissioners of the cities have been and still are subordinate to the civil service commissioners of the state. (L. 1883, ch. 354, amd. by L. 1884, ch. 410, § 8; L. 1897, ch. 428, §§ 4, 5.) The charter of the city of New York does not establish a system of civil service independent of and in derogation of the General Civil Service Laws of the state. (L. 1883, ch. 354, §§ 10, 11, 12; L. 1884, ch. 410; *Smith* v. *People*, 47 N. Y. 339; *People ex rel.* v. *Butler*, 147 N. Y. 164; *Spencer* v. *Myers*, 150 N. Y. 275; *People ex rel.* v. *Dalton*, 24 Misc. Rep. 88–90, 91; *Heckmann* v. *Pinkney*, 81 N. Y. 211; *People* v. *Jaehne*, 103 N. Y. 182; *People* v. *Moran*, 123 N. Y. 254.)

*Theodore Connoly* for respondent. Chapter 186 of the Laws of 1898, which is an amendment of the General Civil Service Law of this state, does not apply to the city of New York. (L. 1883, ch. 354; Const. 1895, art. 5, § 9; L. 1897,

ch. 428; Greater New York Charter, §§ 123, 124.) The
charter provisions as to civil service repeal those of the gen-
eral Civil Service Law of the state so far as New York city
is concerned. (*People ex rel.* v. *Waring*, 1 App. Div. 594;
149 N. Y. 621; *People ex rel.* v. *Waring*, 7 App. Div. 247;
*Matter of Whitney*, 9 App. Div. 621; *Moriarty* v. *City of
Albany*, 8 App. Div.. 118; *People ex rel.* v. *England*, 16
App. Div. 97; *People ex rel.* v. *Coler*, 31 App. Div. 523;
*Matter of Murray Hill Bank*, 153 N. Y. 199.) Gen-
eral laws, in the absence of clear evidence of such an intent,
will not repeal those which are special or local. (Suth. on
Stat. Const. §§ 157–159; *People* v. *Jaehne*, 103 N. Y. 194;
*Matter of The Evergreens*, 47 N. Y. 220; *Matter of Comrs.
of Central Park*, 50 N. Y. 497; *People* v. *Quigg*, 59 N. Y.
88; *McKenna* v. *Edmundstone*, 91 N. Y. 233; *Reynolds* v.
*City of Niagara Falls*, 81 Hun, 356; *People* v. *Koenig*, 9
App. Div. 436; *Lewis* v. *City of Syracuse*, 13 App. Div.
587; *People ex rel.* v. *N. Y. Catholic Protectory*, 101 N. Y.
195–200; *Buffalo Cemetery Assn.* v. *City of Buffalo*, 118
N. Y. 61–66; *Coxe* v. *State*, 144 N. Y. 396–411; *Casterton*
v. *Town of Vienna*, 17 App. Div. 94–100.) The law of 1898
is an amendatory act. (*People ex rel.* v. *England*, 16 App.
Div. 97; *People ex rel.* v. *Coler*, 31 App. Div. 523.) Statutes
will not be given a retroactive effect unless the intent of the
legislature to do so is clear. (*People* v. *Purdy*, 154 N. Y.
439–442; Suth. on Stat. Const. § 463; Endlich on Interp. Stat.
§ 271; *Palmer* v. *Conly*, 4 Den. 374; 2 N. Y. 182; *Sanford*
v. *Bennett*, 24 N. Y. 20; *Amsbry* v. *Hinds*, 48 N. Y. 60;
*N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473;
*Stisser* v. *N. Y. C. & H. R. R. R. Co.*, 32 App. Div. 98;
*Matter of Miller*, 110 N. Y. 216; *Walker* v. *Walker*, 155
N. Y. 77–81.) Whatever may have been the private views
of legislators expressed during debate, it is elementary law
that the legislature is assumed to know the rules of interpre-
tation, and by omitting to prescribe other rules, intends that
the court shall follow them. (*Com.* v. *Churchill*, 2 Metc.
118–124; *State* v. *Brooks*, 4 Conn. 446; 23 Am. & Eng.

Ency. of Law, 337; *Edger* v. *Comrs. of Randolph Co.*, 70 Ind. 331–338; Bishop on Written Laws, § 76.)

GRAY, J.   The appellant claims that, as his removal took effect a day after the enactment of chapter 186 of the Laws of 1898, amendatory of the General Civil Service Law, the rules and regulations of the New York city civil service commissioners, under which the position held by him was taken out of the competitive class, were ineffectual, because not approved by the state civil service board, as required by that act; and, if ineffectual for that reason, the respondent was without power to remove him without an opportunity to be heard. In support of this claim, he argues that the charter of the new city did not establish a complete and exclusive statutory system of civil service for the city, but that the Civil Service Law of the state was in force there, modified only in certain particulars.

The general law was enacted in 1883 (Chap. 354, Laws of 1883), and applied to all the cities of the state.   In framing the charter of the new city of New York, which went into effect on January 1st, 1898, there was inserted a plan for appointments to positions in the civil service.   Portions of the general law were carved out and new provisions were made and all were put together, until a complete system was evolved and incorporated in the charter.   There were sharp and fundamental differences between the charter provisions and the general law.   Section 123 of the charter provided that the mayor should appoint commissioners who, subject to his approval, should prescribe regulations for appointments and promotions in the civil service of the city, for classifications and examinations therein and for the registration and selection of laborers for employment.   Section 124 enacted what these regulations should provide.   Under · the general act of 1883, the duty was devolved upon the mayor of a city to prescribe regulations, which should conform to the scheme of regulations provided in section 2 of the general law and the action of the mayor was to be approved by the state civil service board, before his regulations should go into effect.

It is clear that in these respects there was a striking difference between the civil service system provided for the city of New York and that provided in the General Civil Service Law for the rest of the State. In the one case, a duty of action is imposed upon the commissioners, whose regulations are to be approved by the mayor only; while in the other case, a duty is devolved on the mayor, whose action needs the approval of the state civil service board to be effective. It is evident, from section 125 of the charter, that the legislature was not unmindful, in its enactment, of the existence of the state civil service board; inasmuch as it is therein provided that "It shall be the duty of such persons to make reports from time to time to the state civil service commission, whenever said commission may request, of the manner in which the Civil Service Law, and the rules and regulations thereunder, have been and are administered, and the results of their administration in such city." This was a provision under which the state civil service commissioners might require information; but it gave them no power over the municipal commission.

I think that the charter provisions contained a special and exclusive system for the classification and examination of applicants for employment in the civil service, and for its administration. They manifested a deliberate intention on the part of the legislature to take the city of New York out of the General Civil Service Law of the state. Differences, other than the marked one mentioned, make this plain and they are pointed out in the opinion below. It is to be observed that, in the general law, promotions are on the basis of merit and competition; while, in the charter, they are upon the basis of "ascertained merit and seniority in service, and, upon such examinations as may be for the good of the public service," and, further, that there is a material difference between the charter and the general law, in respect to the examination and employment of laborers.

The act of 1898 only purported to amend sections 8 and 13 of the general act of 1883. It was prospective in its operation and its effect was to change the general law in the respects

mentioned ; but 'while, in terms, it applied to all the cities of the state, it seems to me that the present city of New York was, necessarily, left under its particular system, for the want of apt language to make the act operative upon the charter provisions. There is no repeal, in express terms, of the civil service provisions of the charter and no language from which the intention may be inferred that the act should have any application thereto. As amending specific sections of the act of 1883, it could not be deemed to amend the charter of the new city ; unless the provisions of the latter are to be regarded as a mere application of the general law. But I do not see how that can be true; not only because of the striking differences in the system, but because, if the general act was to be applicable, its embodiment in the charter was needless. Being a special and local law, how could the charter of the city of New York be repealed, or altered, by a subsequent general statute, unless such an intent to repeal, or alter, was manifest ? Where a local and special statute covers the entire ground and constitutes a complete system of provisions and regulations, which the general statute, if allowed to operate, would alter, the settled rule is that it is not to be deemed repealed, except the intent to repeal is clearly manifested. (*Matter of the Evergreens,* 47 N. Y. 216 ; *Matter of Commissioners of Central Park,* 50 N. Y. 493 ; *McKenna* v. *Edmundstone,* 91 N. Y. 231 ; Sutherland on Stat. Construction, § 157.) As it was said in *People* v. *Quigg* (59 N. Y. 83), where the question was whether the provisions of chapter 315 of the Laws of 1844, entitled " An act for the establishment and regulation of the police of the city of New York," which authorized summary judgments upon forfeited recognizances, were repealed by chapter 202 of the Laws of 1855, which extended the provisions of the Code to forfeited recognizances : " Laws, special and local in their application, are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end."

I think the learned justices of the Appellate Division were clearly correct in their opinion of the effect to be given to the act of 1898.

There is, however, another ground upon which the affirmance of this order can be rested and that is that the act of 1898 cannot be given a retroactive effect in its operation.

It is capable of a construction which, recognizing the regulations existing at the time of its passage, simply, required that, in the future, the regulations prescribed therein shall be approved by the state civil service commission. In amending section 8 it provides that " *within two months after the passage of this act,* it shall be the duty of each of said mayors in and by such regulations to cause to be arranged in classes the several clerks and persons employed or being in the public service of the city of which he is mayor," etc. ; and, further, that " such regulations herein prescribed and established, *and all regulations now existing for appointment and promotion* in the civil service of said city and any subsequent modification thereof, shall take effect only upon the approval of the mayor of the city and of the New York Civil Service Commission." In the amendment of section 13 it provides that " if a person holding a position subject to competitive examination * * * *shall be removed or reduced,* the reason therefor shall be stated in writing and filed * * * and the person so removed or reduced shall have an opportunity to make an explanation." These provisions clearly have reference to the future and leave unaffected, and in force, all regulations which had been lawfully adopted at the time of the enactment of the act. Such regulations, as had then been adopted, were within the provisions of the charter and so far from there being any intention expressed to invalidate them, the contrary is apparent from the language quoted. They provide for a period of time of two months, within which the mayor is to perform the duty imposed by the act and, after the expiration of that period, a month elapses within which the state civil service commission may act upon the new regulations. This is shown by the provision that: " After

the termination of three months from the passage of this act no officer or clerk shall be appointed, and no person shall be admitted to or be promoted in either of the said classes *now existing* or that may be arranged hereunder pursuant to said rules," etc. Thus, up to the expiration of the three months, if meanwhile the new regulations have not been approved as required, the existing regulations apply to appointments and classifications and there can be no hiatus in the working of the system.

Not being a remedial statute, the act of 1898 should not be construed to operate retroactively, but as operating only upon cases which shall come into existence after its passage; when, under its new provision, the civil service rules of the city must receive the approval of the state civil service board to be effective.

It is a familiar and well-established rule that every law operates prospectively; unless the legislative intent that it shall act retrospectively is expressed in clear and unambiguous language. Where, as in the present case, a new rule is laid down by the legislative body for the future administration of the civil service system in cities throughout the state, it must, logically, follow that acts done under the authority of the law in force, prior to the time when the new rule takes effect, are valid. The regulations of the New York civil service commission of March 5th, 1898, were validly made, and, being existent when the act of 1898 was passed, were in express terms recognized; but they were required to be further approved by the state board. Hence, what had been done under their authority was lawfully done and was not affected. The classification of the relator's position as non-competitive and his subsequent removal without hearing were lawful acts; because done under the law then in force and before the act providing for changes in the system took effect.

The order appealed from should be affirmed, with costs.

All concur on second ground stated in opinion, except MARTIN, J., who dissents.

Order affirmed.