PEOPLE ex rel. O'CONNOR v. BRADY, Commissioner of Buildings.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

1. OFFICERS—DISCHARGE—REINSTATEMENT—MANDAMUS—LACHES.

Where relator was suspended from the office of inspector of buildings in 1896, but not removed until December, 1897, and he served notice demanding reinstatement in February, 1898, and a second notice in April, 1898, he was not guilty of such laches as would prevent him from maintaining mandamus to compel reinstatement.

2. SAME—VETERANS.

Laws 1896, c. 821, providing for the preferment, employment, and promotion of honorably discharged Union soldiers in the public service, and that, in case of dismissal, charges must be preferred, etc., is general in its application, and repeals the consolidation act of 1882, as amended by Laws 1892, c. 275, § 43, authorizing the discharge of inspectors of public buildings, in so far as the two are inconsistent; and hence a Union soldier, dismissed under authority of the latter act, without charges having been preferred against him, is entitled to compel reinstatement by mandamus.

Appeal from special term.

Mandamus by the people, on relation of Cornelius O'Connor, against Thomas J. Brady, to compel the reinstatement of relator as inspector of buildings. From an order granting a peremptory writ, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Eugene Otterbourg, for appellant.
Louis J. Grant, for respondent.

O'BRIEN, J. The relator was appointed an inspector of buildings on the 15th of January, 1892, and was subsequently transferred from the fire department to the department of buildings. He was examined as to his qualifications for the position of inspector of buildings, and a certificate furnished him, qualifying him for such position, on June 17, 1892, and he continued in that department while Thomas J. Brady was superintendent of buildings. On March 25, 1895, Mr. Brady was succeeded by Mr. Stevenson Constable, who continued to hold the position of commissioner of buildings until the 31st of December, 1897, when he was removed from office. From the records of the department of buildings, it appears that, while Mr. Constable was superintendent, he suspended the relator on January 4, 1896, from duty as inspector, without pay, and finally, on December 30, 1897, removed him from his position, without preferring charges or giving him a hearing. On February 11, 1898, the relator served a notice demanding to be reinstated in his position; and, no attention having been paid to this, he served a second notice on April 19, 1898, in which he based his claim upon the ground that he was a veteran of the late War of the Rebellion. We do not think that the relator was guilty of laches; for, though suspended in 1896, he was not removed till December, 1898, and within two months he served the first, and within four months the second, notice, claiming his right to a preference and his privilege as a vet-

eran. There remains, however, the question as to whether he was entitled to be reinstated.

Section 514 of the consolidation act of 1882, as amended by section 43, c. 275, of the Laws of 1892, provides as follows:

"Any inspector of buildings for any neglect of duty * * * may be punished * * * by suspension from duty with or without pay; but this provision shall not be deemed to abridge the right of said superintendent to remove or dismiss any inspector of buildings from the service of said department at any time in his discretion."

This court has considered this provision in several cases, holding that the veteran acts in force prior to 1896 did not apply to the department of buildings, and that the superintendent or commissioner had the power, in his discretion, to remove, without charges and without a hearing, an inspector, be he a veteran or not. In re Whitney, 9 App. Div. 621, 40 N. Y. Supp. 1151; People v. Constable, 12 App. Div. 628, 42 N. Y. Supp. 1131. These cases followed People v. Waring, 1 App. Div. 594, 37 N. Y. Supp. 478. Subsequently, and by chapter 821 of the Laws of 1896, the legislature enacted provisions respecting the employment and removal of honorably discharged Union soldiers and sailors in the public service of the state of New York, in terms applicable to every department in the state. The first section of this act provides as follows:

"In every public department and upon all public works of the state of New York, and of the cities, counties, towns and villages thereof, and also in noncompetitive examinations under the civil service rules, laws or regulations of the same, * * * honorably discharged Union soldiers, sailors and marines shall be preferred for appointment, employment and promotion. * * * And no person holding a position by appointment or employment in the state of New York or of the several cities, counties, towns or villages thereof, and receiving a salary or per diem pay, * * * shall be removed from such position or employment except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made, and with the right to such employee or appointee to a review by writ of certiorari. * * *"

The contention that the act of 1896 has no bearing or effect upon the special or local law relating to the department of buildings cannot be upheld. It is general in its provisions, and inconsistent with the local law, and is indicative of an intention on the part of the legislature that it should apply, as its express language states, "to every public department in the state of New York and in every city, county, town or village thereof." It is unnecessary to devote any time to a discussion of the effect of a general law upon a local one, in view of the recent and thorough consideration given that question in the Leet Case, 157 N. Y. 90, 51 N. E. 431, and in the Fleming Case, 158 N. Y. 175, 52 N. E. 1113. As said in the latter:

" 'A general statute will repeal special or local acts, without expressly naming them, where they are inconsistent with it, and where it can be seen, from the whole enactment, that it was the intention of the legislature to sweep away all local peculiarities thus sanctioned by special acts, and to establish one uniform system.' Black, Interp. Laws, § 153. 'There is no rule of law which prohibits the repeal of a special act by a general one, nor is there any principle forbidding such repeal without the use of words declarative of that intent. The question is always one of intention, and the purpose abrogating a particular enactment by a later general statute is sufficiently manifested when the provisions cannot stand together.' Suth. St. Const. § 159."

Although the particular act here in question was not involved in either of the cases cited, the reasoning is directly applicable as to the effect of a general upon a local law. In People v. Dalton, 158 N. Y. 204, 212, 52 N. E. 1119, it was said that the law of 1896 applies to the city of New York; but, apart from cases, it is only necessary to take the language of the act of 1896 to reach a conclusion that its provisions are general and sweeping, and that it was intended by the legislature to have universal application within the state, —thus by implication repealing every local law inconsistent with its provisions. Though the act of 1896 was in express terms repealed by chapter 370 of the Laws of 1899, it will be seen, by a reference to sections 20 and 21 of that chapter, that the law of 1896 was re-enacted. However, the status and rights of the relator having been fixed and determined prior to the act of 1899, it is unnecessary to consider in what respect, if any, the language of the prior act has been modified or abrogated. People ex rel. Leet v. Keller, supra.

We think the order appealed from was right, and should be affirmed, with costs. All concur.