WEAR v. TRUITT, Mayor, et al.

(Supreme Court, Appellate Division, Third Department.   May 3, 1916.)

1. CRIMINAL LAW ⬅88—JURISDICTION—CRIMINAL AND OTHER COURTS.
    It is common knowledge that there are City Courts of criminal juris-
diction not known as police courts.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 127; Dec.
Dig. ⬅88.]

2. COURTS ⬅187—ESTABLISHMENT—STATUTES.
    It was the clear policy of the Legislature, as indicated by the Second
Class Cities Law (Consol. Laws, c. 53), to allow the local courts of each
new-born city of the second class to remain intact, free from inter-
ference.
    [Ed. Note.—For other cases, see Courts, Dec. Dig. ⬅187.]

3. JUDGES ⬅3—POLICE JUSTICE—STATUTES—POLICE COURTS.
    Since, under chapter 751, Laws of 1907, criminal jurisdiction in the
city of Binghamton was vested in the City Court, when Binghamton came
under the Second Class Cities Law, election of a police justice was not
required by section 180 of that statute, providing that if, in a city coming
under the statute, there shall be a court of criminal jurisdiction "known
as the police court," it shall have certain jurisdiction, since that section
does not establish, but only defines, the jurisdiction of such courts, if
already in existence, and the City Court was not a court "known as the
police court"; Code Cr. Proc. § 74, providing that courts held by police
justices and Courts of Special Sessions be called police courts, not apply-
ing to the City Court.
    [Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 4–10; Dec. Dig.
⬅3.]

Appeal from Trial and Special Term, Broome County.

Action by D. Walker Wear against Frank H. Truitt, as Mayor, and
others.   From a decision and order of the Special Term, overruling a
demurrer to the complaint, defendants appeal.   Affirmed.

Argued before KELLOGG, P. J., and HOWARD, WOODWARD,
and COCHRANE, JJ.

Maurice E. Page, of Binghamton, for appellants.
Robert S. Wickham, of Binghamton, for respondent.

HOWARD, J.   Under the charter of the city of Binghamton, prior
to January 1, 1908, the criminal jurisdiction of the city was adminis-
tered by a recorder, who presided over a Recorder's Court.   The civil
jurisdiction was vested in a City Court.   By chapter 751 of the Laws
of 1907, which was a complete revision of the charter of the city of
Binghamton, the office of recorder was abolished, and the two courts
were practically merged in one.   Under this consolidation of the two
courts the city judge became clothed with civil and criminal jurisdic-
tion quite similar to that of a justice of the peace, only somewhat en-
larged.   In the fall of 1915 the secretary of state filed with the clerk
of the city of Binghamton a certificate showing that the city had reach-
ed a population of upwards of 50,000 inhabitants, and had, therefore,
become a city of the second class.   This brought into operation in
Binghamton, to take effect January 1, 1916, the Second Class Cities

Law (chapter 55, Laws 1909). It seems to have been assumed that the new charter required the election of a police justice, and accordingly the defendant Harry C. Walker was voted for at the general election on November 2, 1915, and was declared elected to the office of police justice. The city authorities have incorporated in the tax budget an item of $1,500 to pay the salary of this supposed official, and the plaintiff, a taxpayer, brings this action to have this item declared illegal, and to have the city authorities restrained from collecting the same, and for other relief. The defendants have demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer has been overruled. An appeal brings the question before us: Did the Second Class Cities Law require the election of a police justice?

The answer to this question depends upon the construction which may be placed upon section 180 of that statute. That section reads as follows:

"*Jurisdiction of Police Court.*—If, under the general or local laws, there now exists or shall hereafter be established in the city a court of criminal jurisdiction known as the Police Court, it shall have the jurisdiction and powers hereinafter provided."

And the question now arises whether, under the charter of the city of Binghamton in effect just prior to January 1, 1916, there existed "in the city a court of criminal jurisdiction known as the Police Court."

[1] The very language of section 180 implies that there may be courts of criminal jurisdiction not known as Police Courts, and it is common knowledge that there are such courts. It was the evident purpose of the Legislature, as indicated by section 180, not to establish police courts in cities of the second class, but only to define the jurisdiction and powers of such courts in case they were already in existence, or should hereafter be established by other laws. This purpose is made certain when we scan the history of the Second Class Cities Law from its inceptive draft in 1898 (chapter 182, Laws 1898) to its final form in 1909 (chapter 55, Laws 1909). The original scheme of the law, so far as relates to the judiciary, was to establish a City Court in each city of the second class, and also a Police Court. The plan of establishing a City Court was early abandoned by amendment to the original law, but the provision requiring the establishment of a Police Court was continued until the revision of 1906 (chapter 473, Laws 1906). Just prior to this revision the section which required the establishment of a Police Court (section 390) read as follows:

"There shall be a court of criminal jurisdiction, to be known as the 'Police Court,' with the jurisdiction and powers hereinafter provided. There shall be one or more justices of the court."

This section was mandatory, and in any city coming under the operation of the Second Class Cities Law the criminal jurisdiction was vested in a Police Court. But the Legislature grew more inclined, apparently, as the subject was further considered, not to interfere with the local courts of the cities coming, from time to time, under the

Second Class Cities Law, and this inclination culminated in 1906 by the repeal of the command to establish Police Courts and the enactment of section 180, which prescribes the jurisdiction and powers of Police Courts only in case there are such courts already in existence.

[2, 3] As we have seen, there was no Police Court in Binghamton, separate and distinct from the City Court, prior to January 1, 1916. There was no court "known as the Police Court"; that is, none known to the city charter. It might have been so known on the streets, but that is immaterial. In drafting their new charter in 1907, for consideration by the Legislature, the citizens of Binghamton deemed it wise and expedient, it would seem, to amalgamate the criminal court with the civil court. The Recorder's Court, the independent, separate court of criminal jurisdiction was abolished. This plan of amalgamation, suggested by the citizens, was adopted by the Legislature and became a law, and therefore it may be assumed that this scheme, which was styled the "Department of Judiciary," is the one most acceptable to the residents of the city of Binghamton. It was the clear policy of the Legislature to allow the local courts of each new-born city of the second class to remain intact, free from interference. It refrained in the last revised draft of the Second Class Cities Law from establishing a Police Court, and only undertook to define the jurisdiction of those already established. If the City Court is to be split in twain, and a separate, distinct, tribunal created, that would amount to the establishment of a new court, and would be an interference with the present plan, and a complete disarrangement of the "Department of Judiciary" as established and in operation in Binghamton when the Second Class Cities Law took effect.

Our attention has been called to section 74 of the Code of Criminal Procedure which reads:

"Sec. 74. *Jurisdiction.* Police justices have such jurisdiction, and such only as is specially conferred upon them by statute. The courts held by police justices are called Police Courts, and Courts of Special Sessions are also called Police Courts, and are so designated in different parts of the Code."

It may be observed that the City Court of Binghamton was neither a Court of Special Sessions nor a court held by a police justice. This section seems to undertake to define the jurisdiction of police justices, rather than to formulate a definition for Police Courts. But, after prescribing the extent of the jurisdiction of police justices, the remainder of the section seems calculated to provide for the indiscriminate characterization of courts held by police justices, as well as to those known as Special Sessions, as "Police Courts." Perhaps this was to avoid repetition in phrasing other sections of the Code of Criminal Procedure, and perhaps, also, to avoid misinterpretation of other sections. But, whatever may have been its purpose, we do not consider it a sufficient authority for holding that there was in the city of Binghamton, prior to January 1, 1916, a "court of criminal jurisdiction known as the Police Court." The judgment overruling the demurrer should be sustained.

Interlocutory judgment unanimously affirmed, with costs, with usual leave to defendants to plead over on payment of costs. All concur.