(174 App. Div. 650)

McBRIDE v. ASHLEY et al., Common Schools Com'rs.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1916.)

1. SCHOOLS AND SCHOOL DISTRICTS ⬥�き46—PUBLIC SCHOOLS—SCHOOL COMMISSIONERS—STATUTE.

Laws 1842, c. 137, § 13, relating to the common schools of Utica, provides for the election of six commissioners, making it their duty to build and repair schoolhouses. Laws 1898, c. 182, entitled "An act for the government of cities of the second class," and excepting two of the four cities which were the only ones then of the second class, provided in section 2 that, when another city should become a city of the second

class, the provisions of the act should become applicable. Laws 1902, c. 560, continued in force those provisions applicable to public schools. Thereafter Laws 1898, c. 182, was amended by Laws 1905, c. 501, so that, as to cities thereafter becoming cities of the second class, it did not go into effect until 1908. Laws 1906, c. 473, totally repealed Laws 1898, c. 182, but continued Laws 1902, c. 560. Const. art. 2, § 12, requires a special city law to be adopted by the municipality before it shall go into effect. *Held* that, in view of the fact that Laws 1902, c. 560, amending Laws 1898, c. 182, was treated by the Legislature as a special law, it did not, upon the city of Utica becoming a city of the second class in 1905, automatically operate to repeal Laws 1842, c. 137, but, never being adopted, did not go into effect.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 92; Dec. Dig. ☞46.]

2. SCHOOLS AND SCHOOL DISTRICTS ☞79—PUBLIC SCHOOLS—COMMISSIONERS —SCHOOL BUILDINGS.

Second Class Cities Law (Laws 1909, c. 55; Consol. Laws, c. 53) § 120, requiring contracts for work or material for the use of any officer, board, body, or department of the city to be let by the board of contract and supply, except as otherwise provided by law, does not deprive the commissioners of the common schools of Utica of the powers to build and repair schoolhouses conferred on them by Laws 1842, c. 137, § 13.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 188–191; Dec. Dig. ☞79.]

Appeal from Special Term, Oneida County.

Action by John E. McBride against Franklin P. Ashley and others, as Commissioners of Common Schools in the City of Utica, N. Y. From an order (91 Misc. Rep. 585, 154 N. Y. Supp. 1010) denying plaintiff's motion to continue a temporary injunction pendente lite, plaintiff appeals. Affirmed.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

William F. Dowling and Lee & Dowling, all of Utica, for appellant. August Merrill, of Utica, for respondents.

FOOTE, J. This is a taxpayers' action, brought against defendants, as commissioners of common schools of the city of Utica, to restrain them from entering into contracts for installing heating and ventilating plants in two public school buildings in that city. Plaintiff appeals from an order of the Special Term denying his motion to continue during the pendency of the action a temporary injunction enjoining any such contracts.

[1] The ground of the appeal is that defendants are without power to contract for the repair of existing, or the erection of new, schoolhouses. The Special Term held that the commissioners have such power by virtue of section 13 of chapter 137 of the Laws of 1842, entitled "An act in relation to common schools in the city of Utica," and that said chapter is still in force. Plaintiff, while conceding that it has not been expressly repealed, contends that it has been superseded, and in effect repealed, by chapter 560 of the Laws of 1902, entitled "An act to amend chapter one hundred and eighty-two of the Laws of eighteen hundred and ninety-eight, relative to the department of public instruction in cities of the second class."

The act of 1842 provides for election by the people of six commissioners, and gives them the power and makes it their duty to build and repair schoolhouses, and the act in these respects has been treated as in force down to the present time, notwithstanding the act of 1902. The latter act provides for the appointment by the mayor of three commissioners only, and puts upon the city engineer the duty of repairing schoolhouses, and upon the board of contract and supply of erecting new ones. It has never been treated by any of the city authorities as applicable to the city of Utica. Six commissioners have been in office by election down to the present time, and they have built and repaired the schoolhouses. The act of 1902 was an amendment to chapter 182 of the Laws of 1898. The latter act is entitled "An act for the government of cities of the second class." Article VII contains a number of sections under the heading "Department of Public Instruction"; but these were all repealed by chapter 581 of the Laws of 1899, § 40, leaving only section 240 to continue in force, as follows:

"Sec. 240. The department of public instruction shall continue as provided by law."

The act of 1902 re-enacted these repealed sections of the act of 1898, with some changes and additions, but contained a provision in section 3 that the act should not apply to the cities of Rochester and Syracuse. These were second-class cities and at that time there were only two others, Albany and Troy; hence at the time of its adoption the act applied only to those cities. By section 2 of article 12 of the Constitution this act, not being a general city law applicable to all cities of the second class, was a special city law, and could be made to apply only to the cities to which it was submitted for approval. It was submitted to and accepted by Albany and Troy, and became applicable only to those cities. It did not purport to apply to Utica, nor did the act of 1898, which it amends, for Utica had not at that time become a second-class city. It did, however, become such by the state enumeration of 1905. Thereafter the act of 1902 could not constitutionally be made to apply to Utica, except by an act submitted to that city for acceptance. Even if it could be done by a general city law, there is none which purports so to do, as will be seen by what follows.

The above-mentioned act of 1898, which was the statute then in force for the government of cities of the second class, contained the following in section 2:

"Sec. 2. Within thirty days after every state enumeration, the secretary of state shall file with the clerk of every city a certificate showing the population of such city; and if it appears therefrom that such city has since the prior state enumeration become a city of the second class, then all the provisions of this act shall apply to such city on and after the first day of January thereafter."

This would have made the act applicable to Utica on January 1, 1906, but on May 17, 1905, this section was amended by chapter 501 of the Laws of that year by adding to said section 2 the following:

"But the provisions of this act shall not apply to any city that becomes a city of the second class under the enumeration to be had in the year nine-

teen hundred and five, until on and after the first day of January nineteen hundred and eight."

Thus the application of any part of the act to Utica was postponed to January 1, 1908. Before that date chapter 473 of the Laws of 1906 was adopted, entitled "An act to provide for the government of cities of the second class." This act by its terms took effect January 1, 1908. It entirely repealed the act of 1898, and with it would have gone the amendatory act of 1902, but for the following saving clause in the repealing section 230:

"Nothing herein contained, however, shall be deemed to repeal or in any wise affect the validity of the provisions of chapter 560 of the Laws of 1902 [and certain other acts], but all of such acts are hereby continued in full force and effect."

The act of 1906 contained nothing whatever on the subject of a department of public instruction, and contained nothing inconsistent with the act of 1842 remaining in force in Utica, at least as regards the election of its school commissioners and their power to build and repair schoolhouses. The repeal of the act of 1898 left the amendatory act of 1902 to stand as a special city law applicable alone to Albany and Troy. It was no longer in form even a part of any general law. It is not otherwise referred to than as not intended to be repealed in the general act of 1906 or in its successor, chapter 55 of the Laws of 1909 (Consol. Laws, c. 53), the "Second-Class Cities Law," now the governing statute.

In confirmation of our conclusion that the act of 1902 did not become applicable to any second-class city except Albany and Troy, we find the Legislature adopting special acts for the departments of public instruction in Yonkers and Schenectady by chapters 452 and 481 of the Laws of 1908, both of which became second-class cities at the same time as did Utica. That the Legislature did not regard the act of 1842 as superseded by the act of 1902, or any other law, appears from its adoption of chapter 244 of the Laws of 1908 to provide for the sale of bonds of the city of Utica and the use of the proceeds by the commissioners of common schools "in equipping, remodelling and repairing school buildings of the city."

[2] It is further contended by plaintiff that by section 120 of the Second-Class Cities Law (chapter 55, Laws 1909), which requires all contracts for work or material for the use of "any officer, board, body or department of the city" to be let by the board of contract and supply to the lowest bidder, the power to let schoolhouse contracts has been taken from the commissioners. The application of this section is to all such contracts "except as otherwise provided by law." As to Utica it is otherwise provided by law as to schoolhouse contracts, as it is also in all the other cities of the second class. In some and perhaps most of them schoolhouse contracts are let by the board of contract and supply, not by virtue of said section 120, but of certain special statutes applicable to each city.

We conclude that the letting of schoolhouse contracts in Utica is in the hands of the commissioners, and that the order should be affirmed, with $10 costs and disbursements. All concur.