THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROCCO SANSONE, Defendant.

County Court, Oneida County, May 13, 1933.

*Thomas B. Rudd, District Attorney* [*Earle C. Bastow, Assistant District Attorney*, of counsel], for the plaintiff.

*Joseph R. Horigan*, for the defendant.

HAZARD, J. As above indicated, the crime charged against this defendant is a misdemeanor. The indictment was found on March twenty-eighth of this year. It seems that on March twenty-second of this year, six days before the indictment was found, chapter 83 of the Laws of 1933 went into effect. That enactment is a modification of section 183 of the Second Class Cities Law, and in part reads as follows: " The police court shall have, in the first instance, exclusive jurisdiction to try and determine all charges of misdemeanor, committed within the city."

The demurrer raises the point that inasmuch as the crime charged is a misdemeanor and the above-quoted from law was in effect at the time the indictment was found, " said Grand Jury and said Supreme Court were without jurisdiction to find said indictment," and that is the question to be decided here.

It is a matter of history that the jurisdiction and powers of the City Court of Utica have been a prolific source of litigation, but we may go into a consideration of this case feeling secure in the proposition that it has been definitely and authoritatively decided by the Appellate Division in this department, in a case arising in this court, that up to the time of the enactment of chapter 83 of the Laws of 1933, the City Court of Utica did *not* have exclusive jurisdiction in the case of misdemeanors arising within the city of Utica. (See *People* v. *Steppello*, 235 App. Div. 240.)

Just prior to that decision the same decision was made by Mr. Justice CHENEY in another case, in which this court was a party, viz.: *Matter of DeFazio* v. *Oneida County Court* (140 Misc. 487). Just a little prior to that this court had also made a decision to the same effect in the case of *People* v. *Shimco* (111 Misc. 487). We thus have a starting point clearly established, and may proceed with the belief that but for the recent enactment in question, the grand jury would have had jurisdiction in the premises. This brings us to the question as to whether it should be held that section 83 applies to the local situation and supersedes the statute heretofore in force under which the City Court of Utica has been acting. It is undoubtedly true that chapter 83 is what is known as a general statute, that is that it would seem to apply generally to second class cities, purporting to amend section 183 of the Second Class Cities Law, relating to and defining the jurisdiction of Police Courts. It is undoubtedly true, as pointed out more particularly in the decisions above cited, that the City Court of Utica is established under what is known as a special or local law. It was primarily established by chapter 103 of the Laws of 1882, and superseded, so far as criminal jurisdiction is concerned, the old Recorder's Court of the City of Utica. Its jurisdiction was further defined by chapter 352 of the

Laws of 1882. It is to be observed in passing that the first enactment, chapter 103, provided that the City Court " shall have exclusive jurisdiction of all misdemeanors committed within the corporate limits of the city of Utica," but the second enactment, chapter 352, contained this provision: " This section shall not be construed to abridge the powers of any grand jury in the county of Oneida to find any indictment for a misdemeanor committed in said city of Utica, or to abridge the powers of the court of oyer and terminer, or court of sessions, in and for said county, to try any such indictment." It seems to be a general principle of our law that ordinarily what is known as a general statute does not necessarily affect any institution which is itself special or under a local statute; or, as the same proposition is stated in perhaps better language in section 175 of Statutes and Statutory Construction (1 McKinney Cons. Laws, 242) as follows: " A private or local statute is not deemed repealed by a general act, unless it is clearly the legislative intent to effect such repeal." Had the pronouncement stopped there, our course would be clear; but later on in the very same section this appears: " But there is no rule of law which prohibits the repeal of a special act by a general one without the use of express words." These pronouncements seem absolutely contrary, at least in a practical sense. Both are sustained by multifarious citations, although the first has probably ten times as many cases cited in its support as has the last. We may conclude I think from the numerous and not always harmonious decisions that what we have to decide is, as above stated, a question of *legislative intent* specifically as to whether or not we can find reason to decide it was or was not the intention of the lawmakers to supersede the special provisions contained in the law governing the City Court of Utica, by the recent amendment to the Second Class Cities Law. It is a matter of common knowledge that when courts attempt to decide what the lawmaking power " intended " to do in a given case, almost anything may happen. I apprehend that usually the court's guess is largely likely to be colored by the judge's own personal views of right and wrong as applied to the particular enactment in question. If I were to be guided by such a consideration I should promptly decide against the demurrer, because in my view the legislation we are considering is ill advised, its practical effect being to restrict all vice restriction action to the local municipal machinery, and to prevent any action in such cases by both sheriffs and district attorneys; and the plea of " home rule " advanced in its favor to me seems a mere catch-phrase designed to camouflage the very untenable theory that every community should be allowed to decide which, if any, State laws with reference to

vice control it will enforce and which ones it will ignore. The State has the undoubted right to pass laws prohibiting gambling dens and brothels and no jockeying with words or phrases can justify or legalize a given community in deciding that it will have lax enforcement or none at all. Neither does the plea of " uniformity," that is to make the rule conform to that provided for villages by section 182 of the Village Law, carry any appeal. The obvious answer is that " uniformity " is not desirable, if it involves being uniformly *bad*. The proposition that law enforcement in what has come to be known as " vice cases " in the villages should be monopolized by the not always too well-equipped local Police Courts to the exclusion of the better equipped county machinery does not seem to rest on any sounder foundation than a desire on someone's part to have things " free and easy."

The Legislature seems to have done just that with reference to incorporated villages, and we have to decide whether they are to be chargeable with a like intent with reference to second class cities.

We have found the law to be that generally a general statute is not deemed to apply to some institution, court or locality which is under a special statute. An important case in this connection and dealing with about the same situation as we have at bar, is that of *Wear* v. *Truitt* (173 App. Div. 344). The opinion in that case seems to be lacking in clarity and definiteness, but, anyway, we know what the court *did*, and that was to hold that notwithstanding the apparently clear mandate of the statute, the election of a police judge in Binghamton in apparent compliance with the statute, upon its becoming a city of the second class, was held to be illegal and void for the apparent reason that there was in Binghamton already established, elected and acting a city judge; and the court felt warranted in assuming that the Legislature could not have intended to establish a new court in a city which had already established one which was satisfactory to the citizens of that place. Another important case in this connection is that of *People ex rel. Leet* v. *Keller* (157 N. Y. 90). It is claimed by the demurrant that the *Leet* v. *Keller* case has been superseded and overruled by a recent decision of the Court of Appeals in the case of *Matter of MacAdams* v. *Cohen*, reported in a memorandum decision in 260 New York at page 559, the case being the well-known one involving the tenure of office of Joseph V. McKee as mayor of New York city. By the terms of the decision it rests upon that of *Matter of O'Connell* v. *Corscadden* (243 N. Y. 86). An examination of that case shows that the Court of Appeals decided that the general provision of the Second Class Cities Law prevailed in regard to tenure of a mayor, over a different provision in the " former charter of the city of

Albany in effect before the enactment of the Second Class Cities Law " (p. 89). There does not seem to have been any particular consideration given to the matter of the general or specific statute, further than as above outlined. It seems to me, going back to the *Leet* v. *Keller* case, that we can, without unduly stretching a point, detect a difference in ruling between the case of a special isolated provision on the one hand and what amounts to a complete code or system on the other; all of which is made clear by quoting from page 97 of the *Leet* v. *Keller* case as follows: " Where a local and special statute covers the entire ground and constitutes a complete system of provisions and regulations, which the general statute, if allowed to operate, would alter, the settled rule is that it is not to be deemed repealed, except the intent to repeal is clearly manifested." I think we may reason by analogy that the people of Utica having, by repeated enactments, established a court with a jurisdiction satisfactory to themselves, and that court having " a complete system of provisions and regulations," the Legislature could not have intended by the general enactment which we are considering to have interfered with the wishes of the people of Utica with reference to the jurisdiction of their City Court; and intended only to provide for second class cities a general rule applicable only where no previously established special rule existed. But further considering the point involved, the demurrant urges " that within the State of New York there was no court established in any city of the second class as a result of the enactment of the Second Class Cities Law, and it, therefore, must follow that the Legislature in the enactment referred to intended to confer exclusive jurisdiction to try and determine all charges of misdemeanors to all the courts in the cities of the second class exercising police court functions." The logic of the point quoted above may not be entirely sound. If we assume that when chapter 83 was passed there was no city in the State operating under the Second Class Cities Law, so far as Police Courts are concerned, it does not seem necessarily to follow that because *no court* was then operating under the law, the amendment was, therefore, obviously intended to apply to *every court*. The other side of the argument is that the law was obviously passed for some purpose or other, and presumably to affect some city and would not have been passed otherwise. Much discussion occurs in the briefs on both sides with reference to what cities are operating their Police Courts under the Second Class Cities Law provisions, and something in the nature of a question of fact is presented with reference thereto and much historical data is set forth in the respective briefs; but I think the question can be decided without too much delving among the ancient statutes. The original Second Class

Cities Law, sometimes known as the " White Charter," was established by chapter 182 of the Laws of 1898. Sections 390 to 403, inclusive, provided for a " Police Court " and defined its jurisdiction, etc. At that time there were four cities which came under that law, viz., Albany, Troy, Rochester and Syracuse. (See *Trojan Railway Company* v. *City of Troy*, 125 App. Div. 362, 364.) The Second Class Cities Law was amended by chapter 473 of the Laws of 1906, which amendment rather definitely modified the judiciary article and clarified its purport by inserting section 180. That section was in force when Utica became a second class city on January 1, 1908. I regard the wording of that section as of prime importance here. It says: " § 180. Jurisdiction of police court. If, under the general or local laws there *now exists or shall hereafter be established* in the city a court of criminal jurisdiction known as the police court, it shall have the jurisdiction and powers, hereinafter provided." (The italics are mine.) The words italicized do not seem to leave room for doubt but that it was clearly intended that that section, as well as section 183, to which it refers, was designed to apply to all courts then existing or thereafter to be established and whether " under general or local laws." It, therefore, seems clear to me that, if we are to give the section its plain and unequivocal meaning, it must be held to have applied to every second class city in the State and to every court of criminal jurisdiction operating therein, whether pre-existing or " thereafter established," and this statement, if correct, will be decisive of the current argument with reference to what cities, if any, are under the " judiciary article " of the Second Class Cities Law. Unless they were abstracted from the operation of the law as hereafter suggested, they were *all* under the provisions of that law. No other conclusion is possible after a careful reading of section 180, above quoted. Their jurisdiction was defined and established by section 183, the section which was amended by chapter 83 of the Laws of 1933, the act which we are considering, whose purport is to give exclusive jurisdiction to the Police Courts in cases of misdemeanors committed within their respective territorial jurisdiction. The question as to whether it was " intended " to have the recent amendment to section 183 apply to the Utica court could not possibly have arisen and there could be no doubt about it except that in the year 1925, nineteen years after section 180 was adopted, the Legislature by chapter 586 passed a " local law " giving the criminal court in Utica a special rule with reference to its jurisdiction, viz., the same pronouncement that was made in section 4 of chapter 352 of the Laws of 1882, to wit, " this section shall not be construed to abridge the powers of any grand jury of the county of Oneida to find any indictment for a

misdemeanor committed in said city of Utica." And if that was not enough to make it clear that the Legislature intended to abstract the City Court of Utica from the provisions of its general Second Class Cities Law, the Legislature in the following year, in 1926, by section 4 of chapter 588 of the Laws of that year, repealed the above-quoted enactment. These two enactments, following by a substantial number of years the final passage of the judiciary article in the Second Class Cities Law, seem clearly to indicate a definite and reiterated intention on the part of the Legislature to make a special rule regarding the jurisdiction of the City Court of Utica. The new law, chapter 83 of the Laws of 1933, contains no suggestion indicating an intention to reach any further than those courts which were still operating under the general statute, and in the absence of a declaration of any such intention, I think its operation must be held to be so restricted and, therefore, that it does not supersede or affect the special statute under which the City Court of Utica is functioning.

The demurrer must, therefore, be disallowed.