THE PEOPLE OF THE STATE OF NEW YORK ex rel. GENE KIPPER, Appellant, *v.* ALBERT E. ELLINGER, Sheriff of Oneida County, New York, Respondent.

Fourth Department, January 10, 1934.

648

*Joseph R. Horigan* [*William R. Goldbas* of counsel], for the appellant.

*Thomas Brown Rudd, District Attorney* [*Earle C. Bastow* of counsel], for the respondent.

THOMPSON, J. The question we must determine on this appeal is whether the amendment to section 183 of the Second Class Cities Law by chapter 83 of the Laws of 1933, effective March 22, 1933, which gives Police Courts exclusive jurisdiction of misdemeanors, applies to the City Court of Utica. The grand jury of the county of Oneida sitting in Supreme Court indicted relator upon a charge of " being a common gambler, to wit, a misdemeanor in violation of section 970 of the Penal Law  *   *   *   at the City of Utica, in this county." This is an appeal from an order dismissing his writ of habeas corpus in which he contends that the amendment applies to the City Court of Utica, and that the indictment is without authority of law and a nullity. At the time the Second Class Cities Law (Laws of 1898, chap. 182) was first enacted, the city of Utica did not come within its provisions. It was not until the State census of 1905 that the city showed a sufficient population to make it a city of the second class. By the terms of the act, the city having acquired the requisite number of inhabitants, it would have become a second class city on January 1, 1906, but on May 17, 1905, the Legislature amended the law by providing that it should not apply to any city becoming a city of the second class under the enumeration to be had in the year 1905 until on and after January 1, 1908. Under the provisions of the Second Class Cities Law of 1898, the creation and continuance of a Police Court in second class cities was mandatory, but in the general revision of the law, made by the Legislature by chapter 473 of the Laws of 1906, this mandatory provision was omitted, and in its place we find section 180, which provides as follows: " If, under the general or local laws, there now exists or shall hereafter be established in

the city a court of criminal jurisdiction known as the Police Court, it shall have the jurisdiction and powers hereinafter provided."

The City Court of Utica was created by chapter 103 of the Laws of 1882, as amended by chapter 352 of the Laws of 1882 and chapter 154 of the Laws of 1889. The original act (in effect June 1, 1882) gave it exclusive jurisdiction of all misdemeanors committed within the city of Utica, and the same powers and jurisdiction in civil cases as then possessed by Courts of Justices of the Peace in the city. But on June 15, 1882, an act to amend the original act was passed in which it was provided that the jurisdictional section should not be construed to abridge the powers of any grand jury in the county of Oneida to find indictments for misdemeanors committed in said city of Utica, or to abridge the powers of Courts of Oyer and Terminer, or Courts of Sessions, in and for said county to try any such indictment.

The Utica City Court is invested with original criminal jurisdiction (Code Crim. Proc. § 31), and as such it has jurisdiction to try indictments found in the Supreme Court of the county of Oneida for offenses committed in the city. (Code Crim. Proc. § 35.) As thus established, the City Court has been in existence and has exercised the jurisdiction given it by these sections of the Code of Criminal Procedure, with the limitations imposed, to the present time. (*People* v. *Steppello*, 235 App. Div. 240.)

It is contended by appellant that the Legislature by its amendment to the Second Class Cities Law, above mentioned, intended to repeal the provisions of the City Court Act of Utica in the respects in which they are contradictory to it, and to confer exclusive jurisdiction upon the City Court to try all offenses of the grade of misdemeanor. This difficulty must be settled by determining the legislative intent. It is our view that the Legislature did not intend the amendment to apply to the City Court of Utica but to leave it and the City Courts of other cities in like situation already established and in operation by force of general or local statute, unchanged and unaffected, and that it was not within the legislative mind or comprehension that such courts should become in any wise a part of or subject to the Second Class Cities Law. The fact that the cities of Yonkers and Utica have continued to operate City Courts with criminal jurisdiction in their respective cities, under the special laws which created them, and which were in existence at the time of the passage of the original Second Class Cities Law, is a practical construction of the provisions now in question which points to the same conclusion. (*People ex rel. Einsfeld* v. *Murray*, 149 N. Y. 367, 376; *Bareham* v. *City of Rochester*, 246 id. 140, 148, 149.) Moreover, long after the Second Class Cities Law became a

law in its final form (January 1, 1908), the Legislature solemnly re-enacted the Utica City Court Act, and in each re-enacting law it set up the provision saving the jurisdiction of the grand jury of Oneida county to indict for offenses of the grade of misdemeanor. (Laws of 1925, chap. 586; Laws of 1926, chap. 588.) By such action there was demonstrated the legislative knowledge and purpose that the City Court of Utica was maintained and controlled by the statutes that created it, and that the Second Class Cities Law was not designed to, nor did it, repeal or supersede the organic law of the Utica City Court in any respect.

In passing an act amending a law, which may appear to have been superseded or repealed by the terms of another law, the Legislature clearly shows that neither repeal nor supersedure was intended. (*McBride* v. *Ashley*, 174 App. Div. 650, 653.)

It cannot be that in enacting the amendment of 1933 in such general terms the Legislature intended a repeal of the re-enacted provisions of the Utica City Court Act. On the contrary, it is apparent that by omitting to refer to the City Court Act of Utica in the amendment, in terms, the Legislature recognized that the act was an independent statute, and that the criminal jurisdiction of the City Court of Utica was solely defined by its provisions. There is no repeal in express terms and no language is used from which an intention may be inferred that the act should have reference to this court. " ' Laws, special and local in their application, are not deemed repealed by general legislation, except upon the clearest manifestation of an intent by the Legislature to effect such repeal, and ordinarily an express repeal by some intelligible reference to the special act is necessary to accomplish that end.' " (*People ex rel. Leet* v. *Keller*, 157 N. Y. 90, 97.)

Occasion to determine the effect that the Legislature intended the Second Class Cities Law should have upon the courts of a city which were in existence at the time the city became subject to the terms of the act arose in the case of *Wear* v. *Truitt* (173 App. Div. 344). Under the provisions of the Second Class Cities Law, the city of Binghamton became a second class city January 1, 1916. Under the charter of the city prior to this time criminal and civil jurisdiction, similar to that possessed by Courts of Justices of the Peace and Special Sessions, was vested in a City Court, presided over by a city judge. Unlike the charter of the city of Utica, the Binghamton city charter did not contain a provision that its jurisdictional clause should not be construed to abridge the powers of the grand jury of Broome county to indict, or of the trial courts of the county to try indictments found for misdemeanors committed within the city. Upon the assumption that this court was to be

superseded on its criminal side by a Police Court, under the provisions of the Second Class Cities Law, section 180, a police justice was elected at the election preceding the city's becoming a second class city. The city authorities thereupon set up an item of $1,500 in the tax budget of the city to pay the newly-elected police justice's salary, and plaintiff, a taxpayer, brought suit to have the tax declared illegal and its collection restrained. The case came up on a demurrer to the complaint, which was overruled at Special Term. In affirming the action of the Special Term, and in holding that the Legislature did not intend the provisions of the Second Class Cities Law to repeal or supersede the provisions of law under which local courts of such cities were existent, and exercising the jurisdiction conferred on them, the court said: "It was the clear policy of the Legislature to allow the local courts of each new born city of the second class to remain intact, free from interference. It refrained in the last revised draft of the Second Class Cities Law from establishing a *Police Court* and only undertook to define the jurisdiction of those already or thereafter established."

The scope of section 180 of the Second Class Cities Law is confined to "a court * * * known as the police court." There was no such court in the city of Utica when it finally came within the provisions of the Second Class Cities Law, and none has since been set up. (Code Crim. Proc. § 11, subds. 4, 8; *Wear v. Truitt, supra; People v. Steppello, supra.*) It follows that the act does not apply to the courts of the city in any respect.

We conclude that the amendment to the Second Class Cities Law passed by the Legislature of 1933 does not enlarge the jurisdiction of the City Court of Utica, nor does it take away the powers of grand juries, properly drawn and impaneled in the county of Oneida, to find indictments for crimes of the grade of misdemeanors under appropriate provisions of law.

The order should be affirmed.

All concur. Present — Sears, P. J., Taylor, Thompson, Crosby and Lewis, JJ.

Order affirmed, without costs.