# 𝕮𝖆𝖘𝖊𝖘

# FOURTH DEPARTMENT

IN THE

## APPELLATE DIVISION,

### 𝕸𝖆𝖞, 1905.*

THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL B. WILLIAMS, Relator, *v.* THE COUNTY COURT OF MONROE COUNTY, Respondent.

*City treasurer of Rochester — his right to compensation under chapter* 603 *of the Laws of* 1892 *relating to the construction of a sewer in Rochester and the town of Gates — it is not affected by section* 452 *of the charter of cities of the second class, chapter* 182 *of the Laws of* 1898.

Chapter 603 of the Laws of 1892, providing for the construction of a sewer partly in the city of Rochester and partly in the adjoining town of Gates, committed the construction of the sewer to three commissioners. By section 20 of that act, as amended by chapter 438 of the Laws of 1895, the commissioners were required, upon the completion of the sewer, to turn over to the treasurer of the city of Rochester their books of account and money, and the powers theretofore vested in the commissioners relating to the issuing of the warrants, the collection of assessments, etc., were vested in said treasurer.

The said treasurer was required to give a bond and it was provided that he "shall have power to employ a competent person to keep books and make the collections necessary and shall receive therefor out of said sewer funds a sum to be fixed by said common council, not to exceed fifteen hundred dollars annually for his said service and the clerk hire."

Pursuant to a request from the city treasurer the common council of the city of Rochester enacted the following ordinance: "The City Treasurer shall receive, pursuant to Section 20 of Chapter 438 of the Laws of 1895, from the moneys collected by him in payment of assessments for the construction of the West Side Trunk Sewer, the sum of One Thousand three hundred and fifty dollars ($1,350.00) annually for the purpose of paying clerk hire as provided in said Act."

*The other cases of this term will be found in volume 104 App. Div.— [REP.

APP. DIV.—VOL. CV.    1

*Held,* that the Legislature having expressly provided that the sum awarded by the common council was to be for the city treasurer's services and for clerk hire, it did not rest with the common council to determine for what purpose the sum appropriated was to be expended or to restrict the expenditure of the sum appropriated to clerk hire;

That, therefore, the city treasurer was entitled to retain for his own use the sum remaining of the annual appropriation after the payment of his clerical help;

That, as the services required of the city treasurer in reference to the construction of the sewer were independent of and additional to his duties as city treasurer, the payment to him of compensation for such independent and additional services did not constitute a violation of section 452 of the charter of cities of the second class (Laws of 1898, chap. 182), which provides that "no officer of any city government * *, * shall * * * receive to his use any perquisites, compensation or fees, for services pertaining directly or indirectly or which may hereafter be added to the duties of his office, in addition to his salary;"

That the charter did not operate to repeal the special law providing for the construction and maintenance of the sewer.

CERTIORARI issued out of the Supreme Court and attested on the 16th day of January, 1905, directed to the County Court of Monroe county, commanding the said County Court to certify and return to the office of the clerk of the county of Monroe all and singular its proceedings had in auditing the accounts of the relator in connection with the sewer system of certain wards of the city of Rochester, in the town of Gates, county of Monroe.

The question involved in the proceeding was as to the right of the relator to retain to his own personal use, out of the sum of $1,350 awarded him annually under the provisions of the city ordinance mentioned in the opinion, such portion thereof as was not actually expended by him for clerk hire.

*Benjamin B. Cunningham,* for the relator.

*John A. Barhite,* for the respondent.

SPRING, J.:

Chapter 603 of the Laws of 1892 provided for the construction of a sewer called the west side sewer in three wards of the city of Rochester and extending into the adjoining town of Gates. The County Court of Monroe county in compliance with the act

appointed three persons who were constituted the commission to which were committed the entire matters pertaining to the construction of said sewer.

Said act was amended by chapter 438 of the Laws of 1895. Section 20 of the act, as thus amended, required the said commissioners upon the completion of the sewer to turn over to the treasurer of said city their books of account and money, and the powers theretofore vested in the commissioners relating to the issuing of the warrants, the collection of the assessments, etc., were vested in said treasurer including those imposed upon the treasurer of said commission. The treasurer of said city was required by said section to give a bond to be approved by the common council of the city of Rochester, and the section further provides that he "shall have power to employ a competent person to keep books and make the collections necessary and shall receive therefor out of said sewer funds a sum to be fixed by said common council, not to exceed fifteen hundred dollars annually for his said service and the clerk hire." Additional powers and duties were conferred upon the treasurer of said city by chapter 315 of the Laws of 1898, and, among other things, he was required to file with the Monroe County Court an annual verified statement of his financial transactions connected with said sewer fund and the accounts were to be "duly examined and audited by the said County Court." (Laws of 1898, chap. 315, § 7.) The relator was treasurer of the city of Rochester and from May 1, 1898, until the expiration of his official service on December 31, 1903, had the management of the fiscal affairs connected with said sewer.

No amount having been designated by the common council for the compensation of the treasurer or for his clerk hire, he addressed a communication to that body under date of December 4, 1899, enumerating summarily his receipts and disbursements in connection with the sewer fund. He also called attention to section 20 of the statute of 1892, as amended in 1895, relative to the employment by him of a "competent person to keep books and make the necessary collections," and to the fixing of his own compensation and the clerk hire by the common council. On the 24th day of April, 1900, the common council enacted the following ordinance: "Section 1. That the City Treasurer shall receive pursuant to Section 20

of Chapter 438 of the Laws of 1895,* from the moneys collected by him in payment of assessments for the construction of the West Side Trunk Sewer, the sum of One Thousand three hundred and fifty dollars ($1,350.00) annually for the purpose of paying clerk hire as provided in said Act.

"Section 2. This ordinance shall take effect immediately."

The relator during his official incumbency did not file with the County Court any annual statement of his financial transactions relating to this sewer fund. In January, after the close of his official service, he rendered an itemized account including his entire management of this fund and a supplemental account was filed during the pendency of the auditing proceeding. The account was referred to a referee for examination and upon the filing of his report the County Court heard additional proofs.

It appears that on the last day of his official term the relator executed a check in his own favor for $3,170 chargeable to the west side sewer account and which sum was supposed to be the balance remaining of the appropriation authorized by the ordinance already quoted. The entire sum by virtue of this ordinance from May 1, 1898, until the end of the official service of the treasurer was $7,650 and the check was drawn for the amount remaining after the payment of the clerk hire and which amount the relator claimed belonged to him in payment for his services in connection with his management of the financial transactions appertaining to said west side sewer. On a recasting of the accounts of the relator, the County Court found the unexpended balance was $3,050 and disallowed that item deciding that the ordinance did not authorize the payment of compensation to the relator. Aside from this disallowance the accounts filed by the relator were audited and allowed.

We cannot concur in the conclusion reached by the learned county judge. The Legislature imposed burdens upon the city treasurer not within the purview of his office and empowered him to employ a competent bookkeeper. It is evident from the language of section 20 of the statute of 1892, as amended in 1895, that compensation was expected to be awarded to the treasurer for this service which was not incidental to his official service and also for the clerical assistant required to keep the books and make the col-

---

* Laws of 1892, chap. 603, § 20, as amd. by Laws of 1895, chap. 438.— [REP.

lections.　The Legislature delegated just one matter to the common council and that was to fix " a sum" to be awarded, limiting the maximum extent of the authority transmitted.　The Legislature expressly provided that the sum awarded was to be "for his said service and the clerk hire."　It did not rest with the common council to determine for what purpose the sum appropriated was to be expended.　The Legislature determined that question.　The responsibility of the common council began and ended with fixing the sum.　When it assumed to restrict the expenditure of the sum to clerk hire it overstepped the limits of the authority intrusted to it.

The counsel for the respondent ingeniously contends that it was the intention of the Legislature to make the sum awarded apply to payment of the services of the treasurer " or" for his clerk hire, as the local body elected.　It is manifest, as already suggested, that the Legislature had both the compensation of the treasurer and the payment of the clerk hire in view, for it distinctly authorized the treasurer to employ the clerical assistant, and with equal distinctness provided for compensation for the services of the treasurer.　The language of a legislative enactment will not be altered even by changing *and* to *or* unless that change is essential to carry out the obvious purpose of the act.　The change will not be indulged to thwart the legislative purpose.

If it were necessary to spell out intent anywhere we might well say that the common council intended the sum awarded to be used in payment of the compensation as well as clerk hire.　The ordinance is founded on the legislative provision.　The communication of the relator and the report of the committee preliminary to the passage of the ordinance refer to compensation for services as well as clerk hire.　There were no data as to the amount deemed necessary or proper to expend for clerk hire, and it is hardly conceivable that the common council would fix an arbitrary sum for clerk hire without information in regard to the sum probably needed for that purpose.　It is the more reasonable to indulge the presumption that the common council was only seeking to fulfill the legislative mandate by awarding "a sum" without undertaking to transgress the authority committed to it in defining the object for which the appropriation was to be expended.　The references in the ordinance to the act commanding the appropriation and to the payment of " clerk

6 PEOPLE ex rel. WILLIAMS v. COUNTY COURT.

Fourth Department, May, 1905. [Vol. 105.

hire as provided in said Act" are for the purpose of sharply emphasizing the authority for the ordinance rather than to annul in part the legislative direction.

Section 452 of the charter of cities of the second class (Laws of 1898, chap. 182), known as the "White Charter," provides that "no officer of any city government * * * shall * * * receive to his use any perquisites, compensation or fees for services pertaining directly or indirectly or which may hereafter be added to the duties of his office in addition to his salary." This effected no change in the law. (*Hatch* v. *Mann*, 15 Wend. 44; *People ex rel. Phœnix* v. *Supervisors of New York*, 1 Hill, 362; *Merzbach* v. *Mayor, etc., of New York*, 163 N. Y. 16; Dillon Mun. Corp. [3d ed.] § 233.) This rule is founded on public policy and upon the principle that an agreement to give additional compensation to any one for the performance of a service which he is already legally obliged to render is without any consideration to sustain it. (*Carpenter* v. *Taylor*, 164 N. Y. 171.)

We think the relator is not within this prohibition. The west side sewer was constructed partly in the city of Rochester and partly in the town of Gates. It was authorized by a special statute, and the expense was charged upon the property benefited by its construction. The expense of collecting the assessments, of the clerical help and of the payment of the compensation of the commissioners were all provided for in the act and chargeable not to the city but to the fund itself. Later the treasurer of the city succeeded the commissioners and was made the custodian of this fund and the burden of collecting and disbursing the same was imposed upon him instead of upon the commissioners and the clerical force employed by them, but still payment was to be made from the fund. The additional labor was not in the management of the fiscal affairs of the city of Rochester as a city. It arose by virtue of a special provision of law embracing a part of the city and a part of an adjoining town. His salary as treasurer of the city of Rochester was not enhanced, but he was to be paid for performing a distinct service independent of his duties as treasurer and the compensation was not a burden upon the city. The vice which the White charter was designed to prohibit and which was prohibited for years before its enactment, is the enlargement of the

PEOPLE ex rel. WILLIAMS v. COUNTY COURT.   7

App. Div.]          Fourth Department, May, 1905.

salary of a public officer either directly or indirectly. The condemnation does not extend to payment for services not within the compass of his official duties. (*Merzbach* v. *Mayor, etc., of New York,* 163 N. Y. 16.)

The White charter (§ 83, as amd. by Laws of 1899, chap. 581) defines the duties of a treasurer of a city of the second class and they are limited strictly and exclusively to the fiscal affairs of the city. The collection of assessments for this sewer is not within that definition and the duty is not incidental to his official functions.

The White charter did not operate to repeal the special law providing for the construction and maintenance of this sewer. (*People ex rel. Leet* v. *Keller,* 157 N. Y. 90, 97; *People ex rel. New York University* v. *Wells,* 94 App. Div. 271, 278.) As was said in the first case cited (at p. 97): "Where a local and special statute covers the entire ground and constitutes a complete system of provisions and regulations, which the general statute, if allowed to operate, would alter, the settled rule is that it is not to be deemed repealed, except the intent to repeal is clearly manifested."

The whole scheme for the construction as well as the operation of this sewer, including the collection of the assessments, was provided for in these special acts of the Legislature, and outside of the expenses of operation was at the expense of the property benefited. The transfer of this fund to the city treasurer was accompanied by the requirement that he execute a bond for the faithful performance of the duties imposed upon him by the amended act. His official bond did not cover this fund, implying that the new obligation was not within the scope of his official functions. The power must be lodged somewhere and was probably vested in the city treasurer because his office was convenient of access and the services to be performed were in line with his official functions.

The order of the County Court entered January 3, 1905, is hereby modified by striking therefrom that part of said order which disallows the item of $3,050 for compensation of relator, and as so modified affirmed, with $50 costs and disbursements to the relator, to be paid out of said west side sewer fund, and the County Court is directed to audit and allow said item of $3,050 to the relator.

All concurred.

Order of County Court entered January 3, 1905, modified by striking therefrom the part of said order which disallows the item of $3,050 for compensation to the relator, and as so modified confirmed, and the said court is directed to audit and allow said item at the sum of $3,050, with $50 costs and disbursements to the relator, to be paid out of said west side sewer fund.