JAMES O. SEBRING, Plaintiff, *v.* HERBERT R. STARNER and Others, Defendants.

JAMES O. SEBRING, Plaintiff, *v.* WILLIAM O. DRAKE and Others, Defendants.

Supreme Court, Steuben County, December, 1922.

**Municipal corporations — city of Corning — additional services by public officers — compensation therefor — city may not hire automobile from city officer — General City Law, § 3.**

At the time of the revision of the charter of the city of Corning (Laws of 1905, chap. 142) which provides for the election of a chamberlain at an annual salary and also for the appointment by the board of public works of a superintendent of public works at a salary fixed by said board not exceeding a certain sum per annum, the water works were leased by the city to a private corporation. A water department having been created pursuant to statute (Laws of 1906, chap. 195) on January 1, 1907, when said lease terminated, a board of water commissioners was constituted consisting of the mayor and four commissioners appointed by him for a term ending December 31, 1911, at which time all the powers and duties of the board of water commissioners were vested in the board of public works of the city but the members of the board were not invested with any additional office. *Held,* that only as such board of public works could the members thereof exercise and perform the powers and duties of the water commissioners.

It would be an idle formality, therefore, for said board of public works to hold different sessions, one for the transaction of general city business and another for the transaction of the water works business, because it is as the board of public works that they act with reference to the matters concerning the water works.

When the board of public works succeeded to the powers and duties of the water commissioners the defendant S. was chamberlain of the city and the defendant D. was superintendent of public works, each receiving a salary fixed by statute. The board of public works created the position of secretary, appointed S. thereto at a fixed salary and placed upon him the responsibility of collecting water rentals and disbursing the moneys received therefor. Said board also created the position of superintendent of water works, appointed D. thereto at a fixed salary and placed upon him the duty of superintending the water works and supervising the supply and distribution of water. In a taxpayer's action brought under the General Municipal Law for the restitution of public moneys paid to said defendants and to restrain any further payments to them, *held,* that S., as chamberlain, was the custodian of the city moneys other than those received from water rates, and that the collection and disbursement of water funds was not a part of the duties imposed upon him by the charter of the city.

The board of public works, under the statute of 1906, had power to compensate both S. and D. for the additional services performed by them, and it appearing that they are faithful, conscientious officials and have fairly earned all that has been paid to them, the complaint against S. will be dismissed, without costs, but he should be required to file an additional bond conditioned against the loss of water moneys received by him.

In the light of the provision of the city charter that the superintendent of public works shall be " an officer of the board of public works and not a city official," it must follow that D., who had been paid the sum of ten dollars a week for the hire of his automobile for use on official business, is a public officer of the city, and as such under section 3 of the General City Law he was prohibited from being interested directly or indirectly in any contract the expense or consideration whereof was payable out of the city treasury. In his case the plaintiff will be granted judgment enjoining the defendants from leasing D.'s automobile in the future and from paying or auditing any further sum for such use, with costs to the plaintiff.

TAXPAYER's actions for the restitution of public moneys paid to the defendants Starner and Drake and to restrain further payments to them.

*James O. Sebring,* plaintiff, in person.

*Justin V. Purcell,* for defendants Starner and Drake.

*Guy W. Cheney,* for defendants Comosh, Palmer and Killigrew.

*Frank H. Hausner,* for defendants City of Corning, mayor and aldermen.

*H. A. Heminway,* counsel for defendants.

CUNNINGHAM, J. These actions are brought by the plaintiff as a taxpayer under the General Municipal Law, for the restitution of city moneys alleged to have been illegally paid to the defendant Starner and to the defendant Drake and to restrain further payments to them.

The defendant Starner is chamberlain of the city of Corning and is also, as secretary of the board of public works, collecting water rentals and disbursing the moneys received therefor. He has been paid the salary fixed by law as city chamberlain and also an additional sum for services rendered in connection with the collection and disbursement of water moneys.

The defendant Drake is superintendent of public works of the city of Corning and is also serving as superintendent of water works, receiving the salary fixed according to law for the former position and an additional sum for his services in connection with the latter. The defendant Drake has also received the sum of ten dollars per week for the hire of his automobile for use on official business.

The plaintiff claims that it is illegal to pay these additional sums to Starner and Drake.

The charter of the city of Corning was revised in 1905 (Laws of 1905, chap. 142), and provides for the election of a chamberlain at an annual salary of $850 and also for the appointment, by the board of public works, of a superintendent of public works at a salary fixed by the board, not exceeding $1,500 per annum. At

that time the water works were not operated by any department of the city but were leased by the city to a private corporation.    Upon the termination of the lease on January 1, 1907, a water department was created for the city of Corning.    Laws of 1906, chap. 195.    A board of water commissioners was constituted consisting of the mayor and four water commissioners appointed by him for a term ending December 31, 1911. . Upon the expiration of the term of the water commissioners all the powers and duties of the board of water commissioners were vested in the board of public works of the city of Corning.

It has been held that it was the purpose of the water act that the water works should be conducted separately and distinctly from other city business; that the moneys received in connection therewith should be held apart from other city funds and disbursed separately. *Board of Water Commissioners* v. *City of Corning*, 140 App. Div. 11; affd., 201 N. Y. 570.

Upon the expiration of the terms of office of the water commissioners, all their powers and duties were conferred and imposed upon the board of public works.    The members of the board of public works did not thereby become invested with any additional office.    It is only as the board of public works that they can exercise and perform the powers and duties of the water commissioners. It seems to me an idle formality for the board of public works to hold different sessions, one for the transaction of general city business and the other for the transaction of the water works business.    It is as the board of public works that they act with reference to matters concerning the water works.

When the board of public works succeeded to the powers and duties of the water commissioners, Starner was chamberlain receiving the sum of $850 per year fixed by statute and Drake was superintendent of public works receiving the sum of $1,500 per year, the maximum amount allowed by statute.    The board of public works created the position of secretary, fixed an annual compensation for this position, appointed Starner thereto and placed upon him the responsibility of collecting water rentals and disbursing the moneys received therefor.    The board also created the position of superintendent of water works, fixed an annual compensation for this position, appointed Drake thereto and placed upon him the duty of superintending the water works and supervising the supply and distribution of water.

It is claimed by plaintiff that the services performed by Starner in connection with the collection and disbursement of water funds were a part of his duties as chamberlain and that the services performed by Drake as superintendent of water works were a part of his

duties as superintendent of public works and that, therefore, neither defendant could receive additional compensation for such services.

It is well settled that a public official or employee may not receive additional compensation for services pertaining directly or indirectly to the duties of his position or which may thereafter be added thereto. *Merzbach* v. *Mayor, etc., of New York,* 163 N. Y. 16; *People ex rel. Williams* v. *County Court,* 105 App. Div. 1.

It becomes pertinent, therefore, to determine whether the additional services performed by Starner were a part of the duties of the office of city chamberlain or were thereafter added thereto, and whether the additional services performed by Drake were a part of the duties of the office of superintendent of public works or were thereafter added thereto.

The city charter provides that " the chamberlain shall receive, keep safely and disburse all moneys belonging to the city   *   *   *. Suitable books shall be provided by the city for his use, in which he shall enter daily all his receipts and payments, in such manner as to exhibit the several amounts paid by him or to him under each class of purposes for which money shall be raised by tax in said city   *   *   *.   He shall, from time to time and at such times and manner as the common council shall direct, deposit said moneys in such bank or banks as shall be approved by the common council   *   *   *. The common council shall, by resolution to be recorded in its minutes, authorize the payment of all moneys to be paid out of the treasury belonging to the city, and no such moneys shall be paid out of the treasury except in pursuance of a resolution of the common council authorizing the same   *   *   *.   It shall be his duty personally to collect and receive, at his office, all taxes and assessments laid upon the city   *   *   *.   It shall be the duty of the common council, not more than ten days before the annual election in each year, to audit the chamberlain's accounts, and to settle with him for all moneys received by him during the preceding year belonging to the city   *   *   *.   He shall receive an annual salary of eight hundred and fifty dollars in full for his services as city chamberlain *under this act* " (§ 39); and that the chamberlain " shall settle annually with the common council " and " shall account to said common council for all moneys belonging to said city received by him during the preceding year."   " He shall pay to said common council or to his successor in office, as said common council may direct, all such moneys remaining in his hands."   § 58.

At the time the charter was passed water rates were being collected by and were the property of a private corporation.   It is not the purpose or intent of the charter that the common council should have charge of or supervision over funds received from water

rates or disbursements from such funds. The legislature could not have intended, when it adopted the charter, to clothe the common council or the chamberlain with powers or duties relating to the collection and disbursement of water funds which then belonged to a private corporation.

The water act provided that the commissioners should collect the water rentals (§ 12); that they should " enlarge, extend and improve the present system of water works * * * and for that purpose may employ engineers, surveyors, superintendents, officers, agents and such other persons as may be necessary, and fix the compensation and term of employment " (§ 4); that they had " power to make all contracts necessary or incidental to the execution of the powers conferred by this act " (§ 6), and that " all moneys and income which shall be *received by the board* for water shall be deposited to the credit of the water fund account in the bank or banks or trust companies designated by said board " (§ 12); " that the board shall elect a secretary and a treasurer which offices may be combined in one person " (§ 3), and that " the amount derived from receipts from all sources, as hereinafter provided, shall, so far as necessary, be applied to the payment of operating expenses of the water works, and to the payment of principal and interest falling due on said bonds " (§ 11); and that " the moneys derived from the penalties and water rates provided for in this act shall be paid over to the treasurer, [the treasurer of the water board] by him to be immediately deposited in the bank or banks or trust companies designated by said board to the credit of the water fund account and shall be applied as provided in section eleven of this act " (§ 14); and that " the board of water commissioners shall keep books showing the cost of the enlargement, extension and improvement of the said water works, and of all its collections, expenditures, receipts, proceedings and doings " (§ 16), and that " said treasurer is hereby authorized and directed to prepare, and at all times to keep a book or books, in which shall be entered a record of all moneys received and deposited in bank or banks or trust companies and all money paid out or orders or warrants countersigned by him." § 17.

The water act, therefore, placed upon the board of water commissioners the duty of collecting water rates and disbursing the moneys received therefrom.

It is clear that the charter related to city moneys other than those received from water rates. The chamberlain was the custodian of these city moneys and could only pay them out by order of the common council. The water act intended that all water rates should be collected under the supervision of the water commis-

sioners and should be kept in the custody of an officer appointed by it and that all disbursements from the water fund should be made under the direction of the water board and not by order of the common council. The water act does not say that upon the expiration of the term of the water commissioners the chamberlain shall receive water rates, or that expenditures from the water fund shall be authorized by the common council or passed upon by it, or that such funds shall be deposited in banks designated by the common council. Nor is there in the water act any language which can be construed as showing this intention. On the contrary, it expressly declares that these powers and duties shall be vested in the board of public works. If effect is to be given to the unambiguous words of the statute it must be held that the powers and duties conferred and imposed upon the water commissioners were thereafter to be exercised and performed by the board of public works. It became the duty of that board to supervise and direct the collection of water moneys, to designate the banks in which the water fund should be deposited by an employee appointed by it and to authorize expenditures and payments from such fund. It had the power to employ competent persons to assist it in carrying out this duty.

It follows, therefore, that the collection and disbursement of water funds was not a part of the duties imposed by statute upon the chamberlain.

The question remains whether such duties were thereafter added to the duties of the office of chamberla'n. The city charter provides that the chamberlain " shall be *ex-officio* treasurer of the board of public works " and " shall perform such duties as treasurer as may be directed by the board of public works." § 121. It is possible that under this provision the board of public works might have imposed upon the city chamberlain the duty of collecting water rentals and disbursing the moneys received therefor. It did not see fit to do so; instead it created a separate position and imposed upon the incumbent the duty of collecting water rates and disbursing the funds realized therefrom. This the board had the right to do under the powers given to it by the water act. The board then appointed Starner to this newly-created position. There were two reasons why they followed this course; one was that the salary of the chamberlain for his services performed under the charter was fixed by that act and could not be increased; and the second and more cogent reason was that it was the purpose and intent of the water act that all expenses for the construction and maintenance of the water works and for the collection and disbursement of moneys in connection therewith should be paid, as far as possible, from the funds received from water rates. It would not have been

proper, therefore, to have required payment for such services to have been raised by general taxation. It must be apparent that the services performed by Starner in the collection and disbursement of water moneys were not within the scope of the duties imposed upon him as chamberlain.

The same reasoning applies to the office of superintendent of public works. At the time the charter was passed and that office created, the board of public works did not have anything to do with the water works system. Therefore, when it was given control of that system it had the power to create the position of superintendent of water works and to employ a suitable person to fill the position. The board considered it to be for the best interests of the public to appoint the superintendent of public works to the position newly created.

There is no statute or rule of law prohibiting the appointment to the positions so created of persons holding other city offices, provided such persons can perform the duties of both without imperilling public interests. It seems to me that it was for the benefit and convenience of the people of the city of Corning that the city chamberlain, whose duty it was to collect and disburse the other city moneys, should also collect and disburse the water moneys, and that the superintendent of public works, who had supervision of the construction and maintenance of highways, sewers and public works, should have such supervision extended over the water works system. An official or employee serving in two distinct capacities is entitled to compensation for the services rendered by him in each capacity. *Merzbach* v. *Mayor, etc., of New York, supra; People ex rel. Williams* v. *County Court, supra; Matter of Mahoney* v. *Board of Education,* 179 App. Div. 782.

The board of public works has the power to compensate Starner and Drake for the additional services performed by them and it appears from the evidence that they are faithful, conscientious and able officials and have fairly earned all that has been paid to them.

A more serious question is presented as to the moneys paid to defendant Drake for the use of his automobile. This was used by him in the conduct of city business; the rate paid him was not more than was fair for gasoline, oil and upkeep. The board might well have furnished him with an automobile to be used for public business but if it had done so the expense to the city would have been greater. All of the defendants acted in good faith and for the best interests of the city in paying this money to Drake; indeed the good faith of the defendants was conceded upon the trial by plaintiff.

It is contended by defendants that Drake is not a city official

42

and, therefore, was not prohibited from hiring his automobile to the city. The charter provides that the superintendent of public works shall be " an officer of the board of public works and not a city official." If he is an officer of the board of public works necessarily he is not a city employee. He must either be an officer or an employee. The charter makes him an official but says he is not a city official as the same are classified in that act. It must follow that he is a public officer. As he is employed by a board of the city of Corning, performs duties in connection with the business of that city and is paid from the funds of that city, he is a public officer of the city of Corning. A public officer of any city is prohibited from being interested directly or indirectly in any contract the expense or consideration whereof is payable out of the city treasury. General City Law, § 3.

But even if Drake were only a city employee a contract made by him with the city would be illegal. The statute is merely declaratory of the common law. Under the common law both officials and employees were not permitted to enter into contracts with the municipality. The statute only prohibits contracts between the city and officials but the common law still restrains employees from making similar contracts. *Heughes* v. *Board of Education,* 37 App. Div. 180; *Seaman* v. *City of New York,* 172 id. 740; affd., 225 N. Y. 648.

It is contrary to public policy to permit an officer or employee of a city to make a contract with it and such a contract is illegal even though the officer or employee has not gained any benefit therefrom.

It was conceded on the trial that there was no collusion on the part of the defendants in making the payments to Drake for the use of his automobile. When an action for the restitution of public moneys is brought jointly against the officials who paid or authorized the payment and the official who received it, if there were no intentional wrongdoing or collusion, restitution cannot be enforced even though there were a technical illegality in making the payment. *Wallace* v. *Jones,* 195 N. Y. 511; *Daly* v. *Haight,* 170 App. Div. 469; affd., 224 N. Y. 726; *Shiebler* v. *Smith,* 178 App. Div. 925; affd., 226 N. Y. 591; *Crozier* v. *Richardson,* 178 App. Div. 927; affd., 226 N. Y. 591; *Stetler* v. *McFarlane,* 230 id. 400.

In *Stetler* v. *McFarlane* the action was instituted against only the officer who received the money, but the rule as to joint suits is reiterated. After holding that when " the transaction has been executed without fraud or wilful wrong " the officials who made the payment are not liable, the court (at p. 405) says: " The result will not be changed, it seems, though the one who profits is a joint defendant, if joint relief is claimed."

Even if an official act be illegal and no waste or injury is shown, a taxpayer is not entitled to injunctive relief unless it appears that the act " is such as to imperil the public interests or calculated to work public injury or produce some public mischief." *Altschul* v. *Ludwig*, 216 N. Y. 459, 467.

While the illegal act of defendants in hiring Drake's automobile has not resulted in the waste of public funds I believe that if permitted to continue it might " work public injury or produce some public mischief." The fact that such act is against public policy and is prohibited by statute shows that it is likely to produce some public injury. If a city official or employee may let his automobile for hire to the city he will also be permitted to receive compensation for the use by the city of sprinkling carts, vehicles and other equipment. Furthermore, even if the compensation for the use of an automobile be based upon the expense of maintaining and running the same, such compensation may later be increased beyond a fair allowance without such action being noticed by the taxpayers.

If such practice were allowed to continue it might be regarded by officials and employees of cities as permitting them to make contracts with the municipalities they are serving. If payments under this lease were not restrained it would serve to set at naught the law and statute prohibiting such contracts and to permit the public injury which the law and statute seek to prevent.

Under the construction placed by the court upon the charter and water act, the bond given by Starner as city chamberlain does not cover water moneys received by him and he should be required to file an additional bond conditioned against the loss of such funds.

The complaint in the Starner case is dismissed, without costs. Judgment may be entered in the Drake case enjoining defendants from leasing Drake's automobile in the future and from paying or auditing any further sum for such use, with costs to plaintiff.

Judgment accordingly.